Fuld, J.
The intensely practical question presented by this appeal revolves about the attempt of one party to a typical tripartite arbitration agreement to have the court intervene, before an award has been made, and disqualify the arbitrator designated by the other party because of his asserted personal interest and partiality.
The appellant Health Insurance Plan (HIP), a nonprofit corporation organized under this State’s Insurance Law (art. IX-C), is engaged in writing policies of insurance which provide complete medical care. And, to assure such care to its policyholders, HIP enters into contracts with a number of partnerships of physicians, called Medical Groups, whereby they agree to furnish the necessary medical services. In identical contracts made by HIP with those Medical Groups which are the respondents herein, it was agreed that each of them would be paid a fixed sum, or “ capitation ”, for each insured person receiving the services of the particular Group. In addition to such ‘ ‘ capitation ’ ’, HIP agreed to pay each Group an additional sum—termed “ supplemental capitation ” — in an amount depending upon criteria and standards which were to be established in the future.
The contract further recited that, if the parties were unable to agree upon such criteria by a specified date, “ the unresolved issues [were] to go to arbitration” in accordance with the arbitration clause of the contract. This provided, in part, that “ One arbitrator shall be appointed by HIP and another by the GROUP, who jointly shall appoint a third arbitrator ” and that, if the third arbitrator could not be agreed upon, either *132 party was to request the American Arbitration Association to select him. The decision of two of the three arbitrators was to be final and binding upon both parties.
When the parties failed to agree on the essential criteria for ‘ ‘ supplemental capitation ’ ’, the Medical Groups demanded arbitration and appointed an attorney, Samuel Seligsohn, Esq., as their arbitrator. HIP, in turn, designated, as its arbitrator, Dr. George Baehr, a physician with a long and distinguished career in medicine. The Groups objected to the designation of Dr. Baehr. Noting that he was one of the incorporators of HIP and its president from 1950 to 1957 and that he is, currently, a member of its board of directors and one of its paid consultants, they moved for an order (1) disqualifying him on the ground of personal interest, bias and partiality arising out of his relationship with HIP and (2) requiring HIP “ to designate an impartial arbitrator ”. The justice at Special Term granted the motion and the Appellate Division affirmed by a divided court, granting leave to appeal to us on certified questions. Since the order here involved is a final order (cf. Matter of Lipschutz [Gutwirth], 304 N. Y. 58; Matter of Delma Eng. Corp. [K & L Constr. Co.], 5 N Y 2d 852), “ there was neither need nor authorization for the certification of questions, and we dispose of the appeal without answering them.” (Matter of Associated Metals & Minerals Corp. [Kemikalija], 10 N Y 2d 298, 301.)
Although we recognize that a strong argument may be advanced, in reliance upon our statute (Civ. Prac. Act, § 1462, subd. 2), to support the appellant HIP’s contention that the court lacks authority to intervene until after the arbitrators have made an award (see Matter of Franks [Penn-Uranium Corp.], 4 A D 2d 39; see, also, Matter of Dover S. S. Co., 143 F. Supp. 738, 740-741; San Carlo Opera Co. v. Conley, 72 F. Supp. 825, affd. 163 F. 2d 310), we are persuaded that, in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered. (Cf. Western Union Tel. Co. v. Selly, 295 N. Y. 395; Gaer Bros. v. Mott, 144 Conn. 303.) However, the present is not such a case.
Arbitration is essentially a creature of contract, a contract in which the parties themselves charter a private tribunal for *133 the resolution of their disputes. The law does no more than lend its sanction to the agreement of the parties, the court’s role being limited to the enforcement of the terms of the contract. We have had before us numerous cases in which we have been asked to decide whether the parties had contracted to arbitrate their disputes. We have had many other cases in which we have examined the contract to determine the scope of the arbitration and the nature and extent of the arbitrators’ jurisdiction. In the case now before us, we are called upon to interpret the contract in order to resolve a question as to who may sit on the arbitral tribunal.
It is indisputable, as a general proposition, that the parties to an arbitration contract are completely free to agree upon the identity of the arbitrators and the manner in which they are to be chosen. Indeed, our statute so provides, declaring as it does that, ‘ ‘ If, in the contract for arbitration * * '* provision be made for a method of naming or appointing an arbitrator or arbitrators * * * such method shall be followed ” (Civ. Prac. Act, § 1452). And, in interpreting the provision, this court has expressed the view that “ The spirit of the arbitration law being the fuller effectuation of contractual rights, the method for selecting arbitrators and the composition of the arbitral tribunal have been left to the contract of the parties.” (Matter of Lipschutz [Gutwirth], 304 N. Y. 58, 61-62, supra; see, also, Matter of Amtorg Trading Corp. [Camden Fibre Mills], 304 N. Y. 519, affg. 277 App. Div. 531.)
In order to determine, therefore, whether HIP’s choice of Dr. Baehr was permissible or impermissible, we look to the agreement between the parties. It provides, as we have seen, that “ One arbitrator shall be appointed by HIP and another by the GROUP, who jointly shall appoint a third arbitrator.”
This type of tripartite arbitration provision, requiring each side to name its own arbitrator and such party-designated arbitrators to agree upon a third neutral arbitrator, is one which has been widely used in both labor and commercial arbitration. (See Bell Aircraft Corp., 13 L. A. 813, 820-821; Lesser, Tripartite Board or Single Arbitrators in Voluntary Labor Arbitration?, 5 Arb. J. [N. S.] 276; Phillips, A Lawyer’s Approach to Commercial Arbitration, 44 Yale L. J. 31, 47; Pirsig, The New Uniform Arbitration Act, 11 Business Lawyer [April, *134 1956] 44, 47; Note, The Use of Tripartite Boards in Labor, Commercial, and International Arbitration, 68 Harv. L. Rev. 293, passim.) Arising out of the repeated use of the tripartite arbitral board, there has grown a common acceptance of the fact that the party-designated arbitrators are not and cannot be “ neutral ”, at least in the sense that the third arbitrator or a judge is. And, as might be expected, the literature is replete with references both to arbitrators who are “neutrals” and those who are “partial”, “partisan” or “interested” and to arbitration boards composed entirely of “neutrals” and those contrastingly denominated “ tripartite in their membership ”. (Elkouri & Elkouri, How Arbitration Works [Rev. ed., 1960], p. 48; also, pp. 53, 61; see, also, Lesser, Tripartite Boards or Single Arbitrators in Voluntary Labor Arbitration?, 5 Arb. J. [N. S.] 276, 279; Phillips, A Lawyer’s Approach to Commercial Arbitration, 44 Yale L. J. 31, 47-48; Taylor, The Arbitration of Labor Disputes, 1 Arb. J. [N. S.] 409, 413.)
In short, usage and experience indicate that, in the type of tripartite arbitration envisaged by the contract before us, each party’s arbitrator “ is not individually expected to be neutral ” (Second Preliminary Report of Advisory Committee on Practice and Procedure [N. Y. Legis. Doc., 1958, No. 13], p. 146; see, also, Pirsig, The New Uniform Arbitration Act, 11 Business Lawyer [April, 1956] 44, 48; Phillips, A Lawyer’s Approach to Commercial Arbitration, 44 Yale L. J. 31, 47).
In fact, the very reason each of the parties contracts for the choice of his own arbitrator is to make certain that his “ side ” will, in a sense, be represented on the tribunal. And, it was with that thought in mind that this court held the choice of an arbitrator to be a “ valuable ” contractual right not lightly to be disregarded. (Matter of Lipschutz [Gutwirth], 304 N. Y. 58, 65, supra.) In the Lipschuts case, the several parties had agreed that two of them would jointly choose one arbitrator, that the third party to the contract would choose another and that the two party appointees would select a third. When the first two contracting parties could not agree on their joint arbitrator, one of them moved the court to name a single neutral arbitrator to replace the tripartite tribunal agreed upon in the contract. Although the Appellate Division approved this proposal, we reversed and decided, instead, that the court should *135 appoint an arbitrator for the two contracting parties who could not agree, but that the third party should be allowed the right to choose his own arbitrator.
In thus enforcing the party’s contractual right to designate an arbitrator of his own choice, we implicitly recognized the partisan character of tripartite arbitration. The right to appoint one’s own arbitrator, which is of the essence of tripartite arbitration and which was vindicated in the Lipschutz case, would be of little moment were it to comprehend solely the choice of a “ neutral ’ ’. It becomes a valued right, which parties will bargain for and litigate over, only if it involves a choice of one believed to be sympathetic to his position or favorably disposed to him.
Turning to the case before us, there can be no doubt that, when HIP and the Medical G-roups agreed upon the use of a tripartite tribunal, they must be taken to have contracted with reference to established practice and usage in the field of arbitration. (See Bolles v. Scheer, 225 N. Y. 118,121; see, also, Cardozo, The Nature of the Judicial Process, pp. 62-64.) In the light of accepted practice, which sanctions and contemplates two non-neutral arbitrators on a tripartite board, the parties must be deemed to have intended that each was to be free to appoint any arbitrator desired, however close his relationship to it or to the dispute.[1] Moreover, this conclusion is reinforced by the fact that the provision relating to arbitration contains no word of limitation on the identity, status or qualifications of the arbitrators; had the parties intended that their appointees be completely impartial or disinterested, they could have readily so provided.
It is hardly necessary to observe that we enforce the tripartite arbitration clause before us because it is the one chosen by the parties, not because we favor it or regard it as ideal or even *136 desirable. We are, in effect, mandated by the policy, no less than by the terms, of our statute to give life to the tribunal which the parties themselves create. (Civ. Prac. Act, § 1452.) If they choose to have their disputes resolved by a body consisting of two partisan arbitrators, and a third neutral arbitrator, that is their affair. We may not rewrite their contract. (See Matter of Lipschutz [Gutwirth], 304 N. Y. 58, 61-62, supra.)
Nor do we perceive any public policy which condemns or forbids this arrangement. On the contrary, this court many years ago recognized that, although every arbitrator must act fairly and impartially in arriving at a decision and making an award, ‘ ‘ a known interest does not disqualify and the parties may not complain merely because the arbitrators named were known to be chosen with a view to a particular relationship to their nominator or to the subject-matter of the controversy ”, (Matter of American Eagle Fire Ins. Co. v. New Jersey Ins. Co., 240 N. Y. 398, 405; see, also, Matter of Amtorg Trading Corp. [Camden Fibre Mills], 277 App. Div. 531, 532-533, affd. 304 N. Y. 519, supra; Matter of Linwood [Sherry], 14 Misc 2d 495, 496, affd. 7 A D 2d 757, motion for leave to app. den. 5 N Y 2d 711; Matter of Dover S. S. Co., 143 F. Supp. 738, 741, supra.) In point of fact, even in cases where the contract expressly designated a single arbitrator who was employed by one of the parties or intimately connected with him, the courts have refused to disqualify the arbitrator on the ground of either interest or partiality. (See, e.g., Matter of Amtorg Trading Corp. [Camden Fibre Mills], 304 N. Y. 519, affg. 277 App. Div. 531, supra; Jackson v. Barry Ry. Co., [1893] 1 Ch. 238; Eckersley v. Mersey Docks & Harbour Bd., [1894] 2 Q. B. 667; Perry v. Cobb, 88 Me. 435; Nelson v. Atlantic Coast Line R. R. Co., 157 N. C. 194; Barclay v. Deckerhoof, 171 Pa. 378; see, also, Board of Educ. v. Frank, 64 Ill. App. 367, cited with approval in Giddens v. Board of Educ., 398 Ill. 157, 167.)
It is urged that the inclusion of non-neutral arbitrators is alien to the judicial process, with its stricture that judges be completely impartial and dissociated from both litigant and dispute. And so it is. However, although the courts have, on occasion, “ judicialized ” arbitration (see, e.g., Madswick Contr. Co. v. Travelers Ins. Co., 307 N. Y. 111, 119; Matter of Brody, 259 App. Div. 720, 721) and referred to an arbitration board as *137 a “ quasi-judicial tribunal” and to arbitrators as “ judges of the parties’ choosing” or “officers exercising judicial functions ” (see, e.g., Fudickar v. Guardian Mut. Life Ins. Co., 62 N. Y. 392, 399), we are reminded by Dean Sturges that such references are based on nothing more than “remote resemblances” and are “not very meaningful”. (Sturges, Arbitration—What Is It?, 35 N. Y. U. L. Rev. 1031, 1045-1046.)
Our decision that an arbitrator may not be disqualified solely because of a relationship to his nominator or to the subject matter of the controversy does not, however, mean that he may be deaf to the testimony or blind to the evidence presented. Partisan he may be, but not dishonest. Like all arbitrators, the arbitrator selected by a party must (unless the requirement is waived) take the prescribed oath that he will “faithfully and fairly * * * hear and examine the matters in controversy and # * * make a just award according to the best of [his] understanding” (Civ. Prac. Act, § 1455). And, if either one of the party-appointed arbitrators fails to act in accordance Avith such oath, the award may be attacked on the ground that it is the product of “ evident partiality or corruption” (Civ. Prac. Act, § 1462, subd. 2). Such an attack, hoAvever, must be based on something overt, some misconduct on the part of an arbitrator, and not simply on his interest in the subject matter of the controversy or his relationship to the party who selected him. (See Matter of Milliken Woolens [Weber Knit Sportswear], 9 N Y 2d 878; Matter of Lipschutz [Gutwirth], 304 N. Y. 58, 64-65, supra; Matter of American Eagle Fire Ins. Co. v. New Jersey Ins. Co., 240 N. Y. 398, supra; Matter of Friedman, 215 App. Div. 130, 136-137.)[2]
*138 It may well be that there is greater danger that party-designated arbitrators will overstep the bounds of propriety than will those who are disinterested neutrals. But this risk, quite apart from being one to which the parties submitted, is thought by many to be more than offset by certain benefits gained from use of the tripartite board. One such benefit is that arbitrators selected by the parties are, generally speaking, experts on the subject in controversy and bring to their task a wealth of specialized knowledge. As one commentator has indicated, “the expert guidance” furnished by “partisan” arbitrators 1 ‘ can be of assistance to the neutral member, who is not in a position to appreciate the problem and the fine points of its setting”. (Lesser, Tripartite Boards or Single Arbitrators in Voluntary Labor Arbitration?, 5 Arb. J. [N. S.] 276, 279; see, also, Bell Aircraft Corp., 13 L. A. 813, 820-821, supra; Note, 68 Harv. L. Bev. 293, 297 et seq.) Consequently, to disqualify an arbitrator because of his relationship to, or association with, his nominator would be to withhold from the arbitration board a source of the specialized knowledge which contributes to the unique value of the arbitration process. Moreover, any personal advantage to be derived from the power to select as arbitrator anyone he wishes is available to each party and, experience tells us, is ordinarily availed of by both.
In brief, it is our view that, since both parties, by agreeing upon tripartite arbitration, have necessarily accepted the idea of “partisan” appointees, neither may object to the other’s designation of someone associated with his interest or related to him.
The order appealed from should be reversed and the petitioners’ motion denied, with costs in all courts. The questions certified are not answered.

. This is not to say that, under an arbitration provision such as the one before us, a person may serve as his own arbitrator. When the agreement authorizes a party to “ appoint ” an arbitrator, it is implicit in that very provision that he may not appoint himself. Contrary to the contention advanced by the respondents, however, a member of the board of directors of a corporation is not the corporation either in law or fact, and we would be doing violence to both reason and reality were we to say that Dr. Baehr is HIP, or should be so regarded, simply because he is one of a number of persons on its board.

. As previously indicated [supra, p. 134), the Advisory Committee on Practice and Procedure took “ cognizance of the common practice of each party appointing his own arbitrator who is not individually expected to be neutral” and declared that “partiality of such arbitrators should not be a ground for vacating the award ” (Second Preliminary Report of the Advisory Committee on Practice and Procedure [N. Y. Legis. Doe., 1958, No. 13], p. 146). To carry out its recommendations, the Advisory Committee introduced a bill at this 1962 session of the Legislature (S. Int. 26, Pr. 26), now awaiting action by the Governor[1], which permits a vacatur of an award only where the “ partiality ” is that “ of an arbitrator[1] appointed as a neutral ” (CPLR, § 7511, subd. [b], par. 1, cl. [ii]).