**In the Matter of the Arbitration between STEF SHIPPING CORPORATION, Petitioner, and NORRIS GRAIN CO., under Charter Party dated September 17, 1959, Respondent.**

United States District Court
S. D. New York.
Oct. 4, 1962.

Poles, Tublin & Patestides, New York City, for petitioner, Christ Stratakis, New York City, of counsel.

McGovern, Vincent, Connelly & Soll, New York City, for respondent, Hugh P. Mullen, New York City, of counsel.

DAWSON, District Judge.

This is a motion by petitioner Stef Shipping Corporation, brought pursuant to 9 U.S.C. § 10, seeking to vacate an arbitration award in the above proceedings on the following grounds:

(1) Respondent's arbitrator was guilty of misconduct and evident partiality.

(2) The arbitration majority exceeded their authority by making an award without the participation of the arbitrator selected by petitioner.[1]

In September 1959 petitioner and respondent entered into a charter party involving the use of a Liberian flag vessel owned by petitioner. Certain disputes arose between the parties growing out of this transaction and the matter was referred to arbitration pursuant to provisions in the charter party. The charter party included a typical arbitration clause providing for a tripartite arbitration board to be selected, one each by the disputants and the third by the two arbi-

---

[1] "In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C.A. § 10.

trators so chosen.[2] Petitioner designated Captain George Stam and respondent Mr. Henry J. Dahl as their respective arbitrators; the nominated arbitrators being unable to agree mutually upon the third member the petitioner obtained an order of this court appointing John H. Norris to act as the third arbitrator.

The first arbitration meeting was held on November 14, 1961, with all three arbitrators attending, as well as counsel representing both sides. It was at this meeting, petitioner charges, that arbitrator Dahl showed an inability "to conduct himself in an unbiased and impartial manner" thereby rendering himself ineligible to participate further in the arbitration proceedings. Petitioner's contentions as to this first point are based on a series of statements made by Mr. Dahl which indicate, they claim, that Mr. Dahl was partial and biased in favor of his nominators,[3] and that in addition he received evidence improperly from respondent prior to the arbitration.[4]

Counsel for petitioner made several objections to Mr. Dahl's conduct. It should be noted here, however, that although petitioner's counsel severely criticized Mr. Dahl they never requested that he resign or asked the arbitration board to take action to remove him at that time. The first formal demand that Mr. Dahl step out of the proceedings was made by letter dated December 20, 1961, some eight days after the arbitration proceedings were mutually agreed closed, except for the limited purpose of submitting certain documents.

Petitioner's second point grows out of the following circumstances: It appears that relations between the parties became more acrimonious as the hearings progressed, with counsel for each side accusing his opponent's arbitrator of misconduct. Finally, on February 14, 1962, Mr. Norris, the court appointed third arbitrator, called a meeting at which he strongly urged all parties concerned to refrain from their attacks on the arbi-

2. The arbitration clause in the charter party reads as follows:
   " * * * Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men."

3. "MR. DAHL: * * * Under the circumstances, since the owners have apparently got to the point of having this put in on a legal basis, I feel I would like to ask a postponement so that I could have the benefit of legal advice in preparing a counter-statement.
   "MR. POLES [Petitioner's Counsel]: What do you mean by 'preparing a counter-statement'?
   "MR. DAHL: Counter to this here." (S.M. p. 6).
   *       *       *       *       *
   "MR. DAHL: Excuse me. Should we take these items up one by one, or should he complete his statement?
   "CHAIRMAN NORRIS: I think he should be allowed to complete his statement.

"MR. DAHL: And then counteract that?" (S.M. p. 14)

4. "MR. DAHL: With regards to the question of whether there is demurrage at Duluth or not, is a question of whether there isn't any dispatch at Duluth. I have evidence to submit that there is dispatch due rather than demurrage due at Duluth.
   *       *       *       *       *
   "MR. DAHL: But I have evidence here that is in disagreement with the statement here with regard to the claim for demurrage.
   *       *       *       *       *
   "MR. POLES: I am asking a question now. How do you have evidence? You just stated on the record that you have evidence contrary to what the petitioner is presenting. How do you have this evidence come into your possession?
   "MR. DAHL: From Norris Grain Company—copies from the charterers. Copies of the letters, and weather reports —official weather reports.
   "MR. POLES: Norris Grain gave you these?
   "MR. DAHL: That's right.
   "MR. POLES: When did they give you this?
   "MR. DAHL: At the time they asked me to act as Arbitrator." (S.M. p. 15)

trators. There is some dispute as to the exact phraseology of Mr. Norris' remarks, but they were apparently to the effect that if such attacks did not cease the arbitrators might or would be constrained to resign. He also recommended that the parties attempt to settle the entire matter during the next week. Mr. Dahl was not present at this meeting.

On February 16, 1962 counsel for respondent wrote to Mr. Norris demanding an opportunity to examine Captain Stam to determine his impartiality. Some two weeks later Captain Stam proffered his resignation, giving as his reason the continuation of attacks on his impartiality reflected in the aforesaid letter of February 16th.

Despite this resignation, however, Mr. Norris and Mr. Dahl met together and issued an award on May 24, 1962. This award allowed $154.08 on petitioner's original claim of almost $3,000.

Petitioner asserts that the foregoing action was invalid because the arbitration board exceeded its authority in issuing such award after the resignation of one of its members, allegedly pursuant to an agreement or commitment made on behalf of the board by Mr. Norris that all arbitrators would resign if the attacks on the arbitrators continued.

■ The Court will examine this latter contention first. It is true apparently that Mr. Norris, in attempting to calm the proceedings, made some mention of the board resigning if personal attacks on the arbitrators did not cease. But even assuming, *arguendo*, that Mr. Norris did positively state at the February 14th meeting that the entire panel would resign if the attacks were renewed, this was not the type of binding commitment which required the resignation of all the arbitrators in the event of further attacks. To the contrary, it seems to be a

statement made during an informal meeting which was meant to emphasize Mr. Norris's intentions to proceed with the hearings with a minimum of recriminations and controversy. The statement alone, without a further meeting of the parties or the arbitration panel, was no justification for Captain Stam's unilateral decision to resign, and certainly he had no reason to believe that the other arbitrators were bound to follow suit. The respondent's letter of February 16th, which was ostensibly the stimulus for Captain Stam's resignation, was merely a conditional demand for examination of Captain Stam's impartiality "in the event * * * that there is no withdrawal by the claimant of the unjustified attack upon the arbitrator designated by the respondent." (Monroe letter dated February 16, 1962—Exhibit G of petitioner's moving affidavit). Whether this can be called a renewal of the attack is open to question, and in any event it certainly was not operative to automatically bring about the resignation of the entire board without further consultations. Whether Captain Stam's sensibilities are of so delicate a nature that he could not withstand a slur on his professional competence, or whether he resigned for other reasons, is not for this Court to decide. If he felt that the February 16th letter constituted an attack on his impartiality and was grounds for the board's resignation pursuant to Mr. Norris's warning, then he should have requested a meeting of the entire board, stated his belief, and have it take whatever action it felt appropriate. He chose not to do this. The board made no decision to resign en masse and his unilateral decision to do so was not justified. Petitioner's contention, therefore, that the remaining two arbitrators exceeded their authority by rendering an award in the absence of Captain Stam is without merit.[5]

---

5. It is well established, and apparently not contended otherwise by the petitioner, that a determination of two of the three members of an arbitration panel is sufficient to constitute a valid award, assuming that the absent arbitrator's failure to join in the award was not due to the misconduct of the majority. Marine Transit Co. v. Dreyfus, 284 U.S. 263, 52 S.Ct. 166, 76 L.Ed. 282 (1931); Cia De Navigacion "Julia", S. A. v. P. D. Machessini & Co., 170 F.Supp. 214 (S.D.N.Y.1959).

■■ Petitioner urges as a separate ground for vacating the award that Mr. Dahl was guilty of "evident partiality" in favor of his nominator, thus rendering the award a nullity. The Court must disagree. The burden of proving an arbitrator guilty of conduct such as would require a court to vacate an otherwise valid arbitration award lies with the moving party. American Almond Products Co. v. Consolidated Pecan Sales Co., Inc., 144 F.2d 448, 154 A.L.R. 1205 (2d Cir. 1944). Petitioner points to colloquy in the record as an indication that Mr. Dahl took a partisan position in favor of the respondent. (Footnotes 3 and 4 supra). Conceding that Mr. Dahl was partisan and predisposed in respondent's favor, this is not sufficient grounds to disqualify him. Petitioner relies upon the older view, that each member of an arbitration panel must be completely neutral and impartial. More recent pronouncements on the conduct of arbitrators are somewhat more realistic. They recognize that in a tripartite arrangement, where each party to a dispute is given the right to select an arbitrator and the third member is selected by them or by a disinterested party, the arbitrator selected by the disputants cannot be expected to play a wholly impartial part. They are partisans once removed from the actual controversy. The situation has been well summarized in a recent New York case, Astoria Medical Group v. Health Insurance Plan, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (1962), in which the court stated:

"Arising out of the repeated use of the tripartite arbitral board, there has grown a common acceptance of the fact that the party-designated arbitrators are not and cannot be 'neutral', at least in the sense that the third arbitrator or a judge is. * * *

"In short, usage and experience indicate that, in the type of tripartite arbitration envisaged by the contract before us, each parties' arbitrator 'is not individually expected to be neutral' [Citing authorities]." At pp. 404–405 of 227 N.Y.S. 2d, at p. 87, of 182 N.E.2d.

See also Petition of Dover Steamship Co., 143 F.Supp. 738 (S.D.N.Y.1956).

It has been adjudicated that the right to select an arbitrator is a valuable one. Matter of Lipschutz v. Gutwirth, 304 N.Y. 58, 106 N.E.2d 8. The court, in Astoria Medical Group v. Health Insurance Plan, supra, commenting upon this decision, said:

"* * * The right to appoint one's own arbitrator, which is of the essence of tripartite arbitration and which was vindicated in the Lipschutz case, would be of little moment were it to comprehend solely the choice of a 'neutral'. It becomes a valued right, which parties will bargain for and litigate over, only if it involves a choice of one believed to be sympathetic to his position or favorably disposed to him." At p. 135 of 11 N.Y.2d, at p. 405 of 227 N.Y.S.2d, at p. 188 of 182 N.E.2d.

■ Petitioner nowhere urges that Mr. Dahl's determination was based on fraud or corruption, and it fails to point out wherein the majority award itself was improper due to the partiality of Mr. Dahl. It has directed its efforts at attempting to show Mr. Dahl's lack of impartiality, but has neglected to prove or even allege that the award was defective by reason of such partiality. The attacking party must show more than partisanship; it must show some overt misconduct. Astoria Medical Group v. Health Insurance Plan, supra. The fact that Mr. Dahl consulted with his nominator prior to the arbitration hearings is not shocking. It would be unrealistic to expect a party engaged in an arbitration dispute to nominate an arbitrator without telling him what the dispute is about. It must be pointed out that there is no evidence that the award itself was based upon evidence or documents not before the arbitration panel, only that Mr. Dahl had conferred with respondent prior to the start of the arbitration hearings.

Courts have been very hesitant to override arbitration awards, unless the award is shown clearly to be invalid under section 10 of 9 U.S.C.A. Amicizia Societa Navigazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805 (2d Cir. 1960). This is not the type of irregularity which the statute contemplates as being sufficient to vacate an otherwise valid arbitration award. The motion is denied.