Samuel A. Spiegel, J.
This is an application pursuant to CPLR 7503 (subd [b]) to stay arbitration and for related relief. Petitioners are former general partners of the brokerage firm of F. I. Du Pont, Glore Forgan & Co., now in liquidation. Respondent demanded arbitration under the broad arbitration provisions of a certain contribution agreement dated August 13, 1971.
Petitioners became general partners of DuPont, a limited partnership, in 1969. On March 17, 1971 they and other general partners executed a certain reorganization agreement which provided for a large investment of capital by the PHMFG Corporation and the transfer of DuPont’s business to a newly formed corporation (now also in liquidation). Schedule 4 of said agreement made provision for the repayment to certain pledgors (other than DuPont partners) of losses incurred by the pledgors in supplying collateral for the general partners’ loans on behalf of DuPont. The reorganization agreement also provided for the establishment of a Fund for Participating Pledgors of DuPont (the Fund). Respondent was subsequently appointed administrator of said Fund by the NYSE, *39 pursuant to the provisions of schedule 4, after DuPont and PHMFG failed to agree on a person to fill the position. Respondent thereupon arranged for DuPont’s general partners each to sign a contribution agreement and assessed them in accordance with their relative share in the partnership (DuPont). It was agreed by all concerned, including petitioners, that August 17, 1971 would be the effective date of all individual agreements executed by the general partners. In the challenged notice of intent to arbitrate and the statement of claim served on the arbitration director of the NYSE, various general partners, including petitioners, are alleged to have breached their obligations under the contribution agreement dated August 13, 1971. The petitioners’ unpaid assessments range primarily from $2,000 to $10,500, plus one alleged sum due of $25,000.
Although the original application herein seeks, inter alia, a preliminary trial on the issue as to whether petitioners’ subscribed agreements contained an arbitration clause it is clear from the papers that this issue is not a genuine bone of contention between the parties. Petitioners have advanced, in addition, several grounds in support of their application, including a challenge to the basic validity of the entire contribution agreement, including its provision for arbitration. There is no question, however, that the crucial issue raised in this proceeding is whether the arbitration forum provided for in the agreement, under the peculiar circumstances of this case, is a proper one. It is petitioners’ contention that the very fact that they and others have instituted a pending fourth-party action, sounding in fraud and rescission, in the United States District Court, Southern District against the NYSE, precludes any likelihood that they will receive impartial treatment under the rules of the exchange. In the Federal action petitioners charge the NYSE with fraudulently withholding information from them before they became general partners of DuPont, concerning the firm’s inadequate internal accounting controls and procedures for safeguarding customers’ securities in its custody. Petitioners urge that if they are successful in their action against the NYSE, they would become entitled to compensation from the NYSE for all losses resulting from their DuPont’s financial failure, including any award against them in the pending arbitration.
Petitioners’ effort to vitiate the agreements at issue herein, together with the arbitration clause upon which respondent *40 relies, on the ground of a "continuing fraud” by the NYSE unquestionably must fail (cf. Housekeeper v Lourie, 39 AD2d 280, 285). Moreover, whatever be the merits of petitioners’ Federal fourth-party action against the NYSE, any fraudulent acts that may be proven therein would be too remote from the execution by petitioners of their individual contribution agreements to warrant staying arbitration on this ground until the Federal action is concluded, as petitioners urge. Neither does there appear to be merit to petitioners’ contention that since the continuing fraud alleged against the NYSE constitutes a violation of the Securities Exchange Act of 1934 (US Code, tit 15, § 78a et seq.) any agreement to arbitrate the parties’ controversy is void under section 14 of the Securities Act of 1933 (US Code, tit 15, § 77n). The authority relied upon by petitioners in this regard — Wilko v Swan (346 US 427) — involved an action by a purchaser of securities against the seller and is clearly not applicable to the facts of this case. Moreover, even assuming the applicability of Federal law to the arbitration at issue, this court is not thereby rendered powerless to direct arbitration in this matter. The sole question before the court is procedural in nature and its resolution is not determinative of the outcome, of the parties’ controversy (see Matter of Vigo S. S. Corp. [Marship Corp. of Monrovia], 26 NY2d 157, 162).
Further, the fact pattern in Hirsch v DuPont (NYLJ, Feb 5, 1974, p 16, col 8) and Fraeman v DuPont, Sup Ct, NY County [Index No 23712/72]), relied upon by petitioners to support their contention that the NYSE would not provide an unbiased forum for arbitration are distinguishable from the facts in the case at bar. There the parties were directed to proceed to arbitrate their disputes before arbitrators not designated by the NYSE — as provided by the arbitration clauses at issue therein — because a resolution of the disputes favorable to the claimants would have exposed members of the NYSE to contribute to the award. Here such is not the case, since the members of the NYSE have nothing at stake in the outcome of arbitration arising from respondent’s claim that petitioners are indebted to the Fund.
Nevertheless, in the court’s view, the limitation requested by petitioners that no arbitrator designated by the NYSE be a member of the NYSE appears a reasonable one. Clearly, this matter presents an appropriate case for the court to adapt to the circumstances at hand its inherent power to disqualify an *41 arbitrator before an award has been rendered (see Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d 128, 132). Pertinent in this connection is the statement in Commonwealth Corp. v Casualty Co. (393 US 145, 150): "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid the appearance of bias.”
The granting of the aforesaid limitation urged by petitioners is the only fair and reasonable modification of the arbitration clause in question that the court can envision. Further, petitioners’ request that no arbitrator be an employee or a member of the NYSE or derive a substantial portion of his income from doing business with a member firm or an employee thereof is so all-encompassing in scope that any attempt to enforce the proposed strictures might very well result in disqualifying all persons sufficiently knowledgeable in the area of the parties’ controversy to be able to competently determine it on the merits (see Matter of Garfield & Co. [Wiest], 432 F2d 849, 854). Such a turn of events would, in turn, work against this State’s legislative policy of encouraging arbitration (Matter of Weinrott [Carp], 32 NY2d 190, 199) which strikes the court as the overriding consideration in this matter.
Accordingly, the application to stay arbitration is denied in its entirety, with the exception that a member of the NYSE shall not be designated as arbitrator in the pending arbitration proceeding.