Calvin S. CRIM, Plaintiff,

v.

PEPPERIDGE FARM, INC. Defendant.

No. CIV. A. AW 98-2513.

United States District Court,
D. Maryland,
Southern Division.

Jan. 12, 1999.

Christopher C. Fogleman, Rockville, MD for Plaintiff.

Stanley J. Reed, J. Bradford McCullough, Bethesda, MD, for Defendant.

## MEMORANDUM OPINION

WILLIAMS, District Judge.

### I

Currently pending before the Court are Defendant's Motion to Dismiss and Plaintiff's Motion for Summary Judgment. A hearing was held in open court on these motions on January 11, 1999. For the reasons stated on the record, and for reasons that will follow, the Court will grant Defendant's Motion and deny Plaintiff's Motion.

### II

On January 31, 1977, Plaintiff, Calvin S. Crim, Jr. ("Crim"), and Defendant, Pepperidge Farm, Inc. ("Pepperidge Farm"), entered into a "consignment agreement" which granted to Crim an exclusive right to distribute certain Pepperidge Farm products within a demarcated area in Maryland. Pepperidge Farm claims that this agreement was re-

scinded and replaced by a subsequent agreement in 1981, and the 1981 agreement was replaced by a 1982 agreement. Defendant states, however, that the issues raised by Crim in this case would be the same under any of the three documents.

The agreements contained provisions which allowed Pepperidge Farm to terminate Crim's exclusive right to distribute at any time and without cause. Under the agreements, upon termination Crim would be entitled to 125% of the fair market value of the distributorship. The agreements also provide that if the parties did not agree on the amount that would constitute the fair market value of the distributorship, they would enter into arbitration on this issue. The agreements called for three arbitrators, "one of whom shall be chosen by the Bakery [Pepperidge Farm] and one by the Consignee [Crim] and the third by the two first chosen." Consignment Agreement at ¶ 19. Pepperidge Farm claims that only the third arbitrator chosen by the two arbitrators selected by the parties was required to be neutral. Crim claims that he "understood the arbitration clause to call for a neutral arbitration process by which each side would appoint a neutral arbitrator, with those two then choosing a neutral third arbitrator, and the decision being rendered by a majority of the three (3) neutral arbitrators." (Crim's Affidavit at 2, ¶ 8).

Pepperidge Farm terminated the agreement without cause on January 2, 1998. The parties were not able to agree on the fair market value of the distributorship. Pepperidge Farm chose Forrest A. Hainline, III, Esquire as its arbitrator. Crim objected to this appointment, claiming apparent bias because of his connection with Pepperidge Farm. Hainline is currently serving as Pepperidge Farm's arbitrator in a proceeding pending in North Carolina and has served as its legal representative in other matters.

When Pepperidge Farm refused to substitute another person, Crim filed a Petition for Appointment of Arbitrator in the Circuit Court for Montgomery County, arguing that Hainline should be removed due to the "substantial likelihood that any arbitration award entered in this case would be subsequently vacated because of the appearance of possible bias on the part of Mr. Hainline." Petition at ¶ 25.

Pepperidge Farm removed the action to this Court, stating in its Notice of Removal that the amount in controversy was more than $600,000, therefore exceeding the amount required by 28 U.S.C. 1332. After the removal, Plaintiff sought to remand the case, on the grounds that his Petition for Appointment of Arbitrator did not seek the recovery of any amount. In its October 1, 1998 Memorandum Opinion and Order, the Court denied that motion.[1]

### III

Defendant brings its current motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper only if the non-movant cannot prove any set of facts that would entitle her to relief. *See Labram v. Havel,* 43 F.3d 918, 920 (4th Cir.1995) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding whether to grant a motion to dismiss based on Rule 12(b)(6), the Court must "accept the well-pled allegations of the complaint as true, and ... construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir.1997) (citing *Little v. Federal Bureau of Investigation,* 1 F.3d 255, 256 (4th Cir.1993)).

Defendant maintains that "even assuming Mr. Hainline is partial as alleged by Crim, neither the Maryland Uniform Arbitration Act not the Federal Arbitration Act, or relevant case authority, even remotely support Crim's request that Mr. Hainline be removed." (Defendant's Memorandum in Sup-

---

1. Plaintiff later moved to strike his Motion to Remand. As the Court had already ruled on the Motion to Remand, Plaintiff's Motion to Strike was denied as moot.

port at 3). Crim has brought this suit under the Md.Code Ann., Cts & Jud. Proc. § 3–224(b)(2) which provides that a court "shall vacate an award if . . . [t]here was evident partiality by an arbitrator appointed as a neutral, corruption in any arbitrator, or misconduct prejudicing the rights of any party." Defendant argues that the plain meaning of this language would indicate that this subsection "applies *only* to an '*arbitrator appointed as a neutral*' and does not apply to party-designated arbitrators by the parties." (Defendant's Memorandum in Support at 4).[2]

Defendant also maintains that Crim has not established "evident partiality" through the allegations set forth in his complaint. Defendant, citing *Peoples Security Life Ins. Co. v. Monumental Life Ins. Co.*, 991 F.2d 141 (4th Cir.1993), notes that more that the mere appearance of bias is necessary. Courts have held that to establish evident partiality, "the party seeking vacation has the burden of proving that a 'reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration.'" *Hobet Mining, Inc. v. International Union, United Mine Workers of America, et al.*, 877 F.Supp. 1011, 1018 (S.D.W.V.1994) (citations omitted). Defendant also relies on Justice White's concurrence in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, in which White wrote "that arbitrators are not automatically disqualified by a business relationship with the parties before them if both parties are informed of the relationship in advance, or if they are unaware of the facts but the relationship is trivial." 393 U.S. 145, 150, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968).[3]

Defendant notes that there are no cases from the Maryland state courts that have expressly addressed tripartite arbitration. Defendant maintains, however that "it is well recognized—under other states' Acts as well as the Federal Arbitration Act—that any neutrality requirement is imposed *only* on neutral arbitrators and *not* on party-designated arbitrators." (Defendant's Memorandum in Support at 5). An early case that so held was *Astoria Medical Group. et al. v. Health Insurance Plan of Greater New York*, 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (N.Y.1962). In that case, the Court of Appeals of New York stated:

> Arising out of the repeated use of the tripartite arbitral board, there has grown a common acceptance of the fact that the party-designated arbitrators are not and cannot be "neutral", at least in the sense that the third arbitrator or a judge is. And, as might be expected, the literature is replete with references both to arbitrators who are "neutrals" and those who are "partial", "partisan" or "interested" and to arbitration boards composed entirely of "neutrals" and those contrastingly denominated "tripartite in their membership" . . . .

> In short, usage and experience indicate that, in the type of tripartite arbitration envisaged by the contract before us, each party's arbitrator "is not individually expected to be neutral" . . . . In fact, the very reason each of the parties contracts for the choice of his own arbitrator is to make certain that his "side" will, in a sense, be represented on the tribunal. . . .

> The right to appoint one's own arbitrator, which is of the essence of tripartite arbitration . . . would be of little moment were it to comprehend solely the choice of a "neutral". It becomes a valued right, which parties will bargain for and litigate over, only if it involves a choice of one believed to be sympathetic to his position or favorably disposed to him.

*Id.* at 87–88.

---

2. Defendant later argues that the Federal Arbitration Act applies instead of Maryland law. 9 U.S.C. § 10(a)(2) provides that a court may vacate an award "[w]here there was evident partiality or corruption in the arbitrators, or either of them." Plaintiff maintains that Maryland law applies, but has not explained why it should apply. The agreements themselves do not contain a choice of law provision. Because the agreements were between citizens of different states, and involved interstate commerce, the Court finds that federal law applies. However, the Court believes that the issues in the case would be decided the same way under Maryland law.

3. The general view of most courts is that White's concurrence is a better indication of the Supreme Court's thinking than Justice Black's lead opinion. *See Merit Ins. Co., v. Leatherby Ins. Co.*, 714 F.2d 673, 682 (7th Cir.1983); *Standard Tankers Co., Ltd. v. Motor Tank Vessel, et al.*, 438 F.Supp. 153, 157 (E.D.N.C.1977).

Defendant argues that since all Crim has alleged is that Hainline may be predisposed towards Defendants, he has not stated a claim upon which relief can be granted. Defendant also maintains any challenge to Hainline's impartiality is also untimely. Defendant argues that "neither an arbitrator's relationship with a party, nor his conduct in connection with that relationship, is valid ground for removing the arbitrator *before* an award has been rendered." (Defendant's Memorandum in Support at 9 n. 6) (citing *Aviall, Inc. v. Ryder System, Inc.*, 110 F.3d 892 (2d Cir.1997)).

Plaintiff argues that the plain language of the contract does not reference partisan arbitrators. He maintains that he understood the contract to mean that three neutral arbitrators, one chosen by him, another chosen by Pepperidge Farm, and the final one chosen by the other two, would make the decision. Relying on *Black's Law Dictionary* and *Barron's Law Dictionary*, he claims that his interpretation was a reasonable one. Therefore, he maintains that the contract language was ambiguous because it could be interpreted in these two ways.

Plaintiff next argues that, because the language is ambiguous, the doctrine of *contra proferentum* applies, and the contract should be construed against the drafter of the contract. As Pepperidge Farm wrote the language, Crim maintains that his interpretation should be used instead of its. Plaintiff also claims that the agreements themselves were not the result "of fair and careful negotiations by which each side bargained for the terms and language of each provision." (Plaintiff's Memorandum in Opposition at 5). Instead, he claims that the agreements contained boilerplate language. He further states that because he was a single unrepresented individual at the time the contract was signed the Court should not find that he should be required to know the industry's interpretation of such language. Plaintiff also claims that Defendant would not allow him to have an attorney examine the agreements before he signed them.

Moreover, Plaintiff argues that if Defendant wanted its interpretation of the language to have effect, it "could easily have avoided the entire issue simply by providing that each party would appoint an arbitrator, and the two would then choose a neutral third. The insertion of the 'neutral' qualifier would have been sufficient to put Mr. Crim on notice that the two to be appointed would therefore *not* be expected to be neutral." *Id.* at 7.

Plaintiff claims that he is entitled to summary judgment. Summary judgment is appropriate when there is no genuine dispute of material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The evidence of the non-movant is to be believed and all justifiable inferences drawn in her favor, but a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985)). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted).

Plaintiff argues that if the ambiguity in the language of the agreements is construed in his favor, Hainline cannot serve as an arbitrator because he is not neutral. Crim maintains that there are no genuine issues of material fact in dispute as to this issue.

Defendant counters that Crim has not cited any cases that support his position that this language is ambiguous. Defendant maintains that its interpretation is the standard interpretation given to arbitration

clauses like the one in the agreements. In fact, Defendant argues "[i]f . . . parties wish to deviate from the norm by requiring that all three arbitrators be neutral, such a 'neutrality' requirement must be expressly included in the contract." (Defendant's Reply at 4). Defendant notes that courts have upheld arbitration agreements between large corporations and single individuals.

Defendant also argues that summary judgment would be inappropriate because whether Crim actually believed the interpretation now offered by him applied when he signed the agreements is a fact intensive question. Pepperidge Farm contends that it would be entitled to discovery into Crim's "general experience in business transactions; the existence of other business opportunities or possibilities for Crim, his general sophistication in business matters and contracts; his educational background. . . ." *Id.* at 6 n. 5. Defendant maintains that if the court finds the language to be ambiguous, "Crim's own Affidavit establishes that there would be genuine disputes of material facts surrounding the execution of the agreements." *Id* at. 11. Moreover, Defendant claims that there are still factual issues regarding Hainline's impartiality which have not be developed through discovery as of yet.

In his Reply, Plaintiff maintains that Defendant has not properly rebutted the statements made in his Affidavit, but instead has "merely aver[red] in conclusory, unsworn statements that factual disputes exist . . ." (Plaintiff's Reply at 2). Crim states that Defendant has not produced any evidence that he did not believe that the contract language meant three neutral arbitrators. Further, Crim states that Defendant cannot create a genuine dispute merely by referencing, but not denying, the statements in Crim's Affidavit.

### IV

■ The Court has examined § 19 of the Consignment Agreements very carefully. Looking at the language within the four corners of the document, the Court finds the language of this paragraph to be clear and unambiguous. This language should be read as providing for two arbitrators that are party representatives and one neutral arbitrator. As the Court finds that the language is unambiguous, the Court also finds that Plaintiff's complaint fails to state a claim upon which relief can be granted. Defendant's Motion must be granted.

■ Even if the Court found that the language of the agreements was ambiguous, the Court could not grant Plaintiff's Motion. Plaintiff has not demonstrated that Hainline is "evidently partial." Instead, Plaintiff has merely pointed to an appearance of impropriety. Therefore, he cannot be entitled to judgment as a matter of law.

■ Moreover, the Court has concerns about the timing of this suit. Pepperidge Farm argues that it is untimely because it is brought before an award is granted. The Court agrees. If the parties are allowed to challenge the arbitrator chosen by their opponents based merely on the appearance of impropriety before the arbitrators are given a chance to demonstrate that they will "participate in the arbitration process in a fair, honest and good-faith manner," then the floodgates to litigation will be open. *Metropolitan Property and Casualty Ins. Co. v. J.C. Penney Casualty Ins. Co.*, 780 F.Supp. 885, 892 (D.Conn.1991). This would be counter to the purpose of arbitration process in general, and the Federal Arbitration Act in particular, which is "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *O.R. Securities, Inc. v. Professional Planning Assoc., Inc.*, 857 F.2d 742, 745 (11th Cir.1988) (citing *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179, (11th Cir.1981)).

■ Although the Fourth Circuit has not explicitly addressed the issue, other courts have held that under the Federal Arbitration Act, "courts cannot review the impartiality of arbitrators until after an award has been issued." *Paul Davis Systems of Northern Illinois, Inc. v. Paul W. Davis Systems, Inc.*, No. 98 C 2027, 1998 WL 749041, at *5 (N.D.Ill. Oct.15, 1998). *See also Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir.1997); *Folse v. Richard Wolf Med. Instruments Corp.*, 56 F.3d 603, 605 (5th Cir. 1995) ("By its own terms, § 10 authorizes

court action only after a final award is made by the arbitrator."); *Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n. 4 (2d Cir.1980) ("[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."). Absent extraordinary circumstances under which the Court's equitable powers could be invoked, such as overt misconduct on the part of the arbitrator, the remedy available to a party who suspects that an arbitrator will be impartial is to seek to vacate the award after it is rendered. *See Metropolitan Property and Casualty Ins. Co.*, 780 F.Supp. at 892–96 (stating that the overt misconduct alleged in that case had exceeded the partiality expected for a partisan arbitrator and finding that the court could remove the arbitrator prearbitration). Since the Maryland Uniform Arbitration Act does not contain a provision which provides for the pre-award removal of an arbitrator, the Court finds that the same result should occur even if Maryland law was applied.

An order consistent with this Opinion will follow.

### ORDER

In accordance with the Memorandum Opinion, and for the reasons stated on the record in open court, IT IS this 12th day of January, 1999, by the United States District Court for the District of Maryland, Southern Division, hereby **ORDERED:**

1. That the Defendant's Motion to Dismiss [12–1] BE, and the same hereby IS, **GRANTED;**

2. That the Plaintiff's Motion for Summary Judgment [13–1] BE, and the same hereby IS, **DENIED;**

3. That the Clerk of the Court **CLOSE** this case; and

4. That the Clerk of the Court mail a copy of this Order to all parties of record.