Matter of Borgia v SCO Family of Servs. (2025 NY Slip Op 01801)

Matter of Borgia v SCO Family of Servs.

2025 NY Slip Op 01801

Decided on March 26, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 26, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ANGELA G. IANNACCI, J.P.
LARA J. GENOVESI
LILLIAN WAN
CARL J. LANDICINO, JJ.

2021-08843
 (Index No. 523734/19)

[*1]In the Matter of John Borgia, etc., et al., appellants,
v
SCO Family of Services, respondent.

ArentFox Schiff LLP, New York, NY (Elliot M. Kroll, Hunter T. Carter, Alexandra Coppola, Apeksha Vora, Andrew Dykens, and Brian Farkas of counsel), for appellants.
Rosenblum Newfield, LLC, White Plains, NY (James S. Newfield of counsel), for respondent.

DECISION & ORDER
In a proceeding pursuant to CPLR 7601 to enforce an alternative dispute resolution provision of a contract, the petitioners appeal from an order and judgment (one paper) of the Supreme Court, Kings County (Devin P. Cohen, J.), dated September 23, 2021. The order and judgment, insofar as appealed from, denied the petition and dismissed the proceeding.
ORDERED that the order and judgment is reversed insofar as appealed from, on the law, with costs, and the matter is remitted to the Supreme Court, Kings County, for further proceedings in accordance herewith and a new determination thereafter of the petition.
By participation agreement (hereinafter the agreement) executed in 2006, SCO Family of Services (hereinafter SCO) agreed to become a member of the Roman Catholic Diocese of Brooklyn Workers' Compensation Trust (hereinafter the Trust), a group self-insurance trust, and to abide by the terms of the Trust agreement and the Trust bylaws. SCO's participation in the Trust ended in December 2007, and the Trust closed in August 2008.
In 2010, the petitioners (hereinafter the Trustees) determined that the Trust's liabilities exceeded its assets by $14.8 million and assessed each former member of the Trust a proportionate share of the alleged deficit, with SCO being assessed approximately $3.45 million. In April 2010, the Trust sent SCO an invoice in that amount and advised SCO that the Trustees had voted that the assessment could be paid in five yearly installments due by July 1 of each year. In June 2010, SCO responded by letter requesting numerous documents so that it might verify the assessment claimed to be due.
In June 2011, SCO made two payments totaling $690,561, which was approximately 1/5 of the total assessment. In a letter, SCO advised that this payment was meant to demonstrate its commitment to verify and pay the assessment and again sought information to allow it to "validat[e] the proper amounts that we may owe to the Trust." In 2014, SCO paid the Trust $300,000. No further payments were made by SCO to the Trust, and in July 2019, the Trust advised SCO that it had filed a dispute with a dispute resolution subcommittee pursuant to the "Member Disputes" [*2]provision of the Trust's bylaws (hereinafter the Member Disputes provision). The Member Disputes provision required the Board of Trustees to create a subcommittee to "mediate any dispute between the Trust and its Members regarding billing, audits, or any other topic related to the Trust Membership." The Member Disputes provision further provided that in the event that mediation was not successful, the Trustees would render a binding decision. SCO did not respond to the filed dispute.
In October 2019, the Trustees commenced the instant proceeding pursuant to CPLR 7601 to enforce the Member Disputes provision. SCO moved pursuant to CPLR 3211(a) and 7601 to dismiss the petition, contending, among other things, that the Member Disputes provision violated public policy because it permitted a party to the agreement to resolve disputes thereunder. The Supreme Court denied SCO's motion, and SCO served an answer in which it asserted, inter alia, certain affirmative defenses, including that the statute of limitations on the Trustees' claim to recover the unpaid portion of the assessment had expired. In an order and judgment dated September 23, 2021, the court, among other things, denied the petition and dismissed the proceeding on the basis of that affirmative defense. The Trustees appeal.
The Supreme Court erred in determining, as a matter of law, that the claim the Trustees seek to resolve by alternative dispute resolution is barred by the statute of limitations. The petitioners' claim that SCO failed to pay sums due under the agreement is subject to the six-year statute of limitations applicable to breach of contract causes of action (see CPLR 213[2]; Kimso Apts., LLC v Gandhi, 129 AD3d 670, 672). Such a claim for payment of a sum of money allegedly owed pursuant to a contract accrues when the party claiming to be owed money "possesses a legal right to demand payment" (Costello v Curan & Ahlers, LLP, 224 AD3d 734, 736 [internal quotation marks omitted]).
Here, the Trustees, recognizing that SCO was charged the $3.45 million assessment in 2010, more than six years prior to the commencement of this proceeding, contend that the statute of limitations was renewed in 2014, when SCO made a $300,000 partial payment to the Trust (hereinafter the 2014 payment). "[P]artial payment of a debt, if made under 'circumstances from which a promise to honor the obligation may be inferred,' will operate to start the statute of limitations running anew from the time the partial payment is made" (id., quoting Roth v Michelson, 55 NY2d 278, 281). "To show that the statute of limitations has been renewed by a partial payment, it must be shown that the payment was accompanied by circumstances amounting to 'an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder'" (id., quoting Lew Morris Demolition Co. v Board of Educ. of City of N.Y., 40 NY2d 516, 521; see Nationstar Mtge., LLC v Dorsin, 180 AD3d 1054, 1057).
In the present case, there is a question of fact as to whether the 2014 payment served to start the statute of limitations running anew (see Costello v Curan & Ahlers, LLP, 224 AD3d at 736-737). The record includes several letters from SCO to the Trust in which SCO generally acknowledged its obligation to pay its share of valid Trust liabilities but repeatedly sought to verify the claimed deficit. It could be determined from this evidence that any promise on SCO's part to pay the remainder of the assessment that might be inferred from the 2014 payment was conditioned upon SCO verifying that additional amounts were due. Nevertheless, the record is devoid of any evidence concerning the circumstances under which the 2014 payment was made, such as correspondence from that time period. Under these circumstances, a question of fact exists as to whether the running of the statute of limitations was renewed by the 2014 payment (see id.).
The Trustees further contend that, at the least, they are entitled to recover yearly installment payments that came due within the six years prior to the commencement of this proceeding, i.e., after October 2013. Where a contract requires the payor to make installment payments, a new breach occurs, for statute of limitations purposes, each time the payor fails to make a required payment (see Student Loan Sols., LLC v Colon, 231 AD3d 991; CSEA Empl. Ben. Fund v Warwick Val. Cent. School Dist., 36 AD3d 582, 584; Beller v William Penn Life Ins. Co. of N.Y., 8 AD3d 310, 314). Contrary to the Supreme Court's determination, to the extent the parties agreed to an installment payment plan, SCO's failure to pay the second installment in 2012 would not have [*3]started the statute of limitations running on the entire assessment, but rather, the failure to pay each installment would constitute a new breach, and the Trustees' claims to recover the installment payments due after October 2013 would not be time-barred (see Deutsche Bank Natl. Trust Co. v Limtcher, 193 AD3d 686; Wells Fargo Bank, N.A. v Cohen, 80 AD3d 753, 754).
However, a question of fact exists as to whether the parties agreed to an installment payment plan. The parties initially agreed, through the Trust bylaws incorporated into the agreement, that installment payment plans would not exceed one year. While the Trust thereafter offered SCO a five-year installment payment plan, the evidence in the record fails to demonstrate, as a matter of law, that SCO agreed to the five-year installment payment plan.
Accordingly, since questions of fact exist as to SCO's affirmative defense alleging expiration of the statute of limitations on the Trustees' claim to recover the unpaid portions of the assessment, the Supreme Court should not have denied the petition and dismissed the proceeding on that basis.
As an alternative ground for affirmance of the order and judgment (see Parochial Bus Sys. v Board of Educ., 60 NY2d 539; Ciatto v Lieberman, 266 AD2d 494), SCO contends on this appeal that the Member Disputes provision violated public policy because it allowed a party to the agreement to resolve disputes thereunder. This contention is without merit. "As a general proposition, 'parties to an arbitration contract are completely free to agree upon the identity of the arbitrators'" (Yonkers Contr. Co. v Port Auth. Trans-Hudson Corp., 87 NY2d 927, 929, quoting Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d 128, 133). Such alternative dispute resolution agreements have been enforced "'even in cases where the contract expressly designated a single arbitrator who was employed by one of the parties or intimately connected with [it]" despite the arbitrator's apparent "'interest or partiality'" (Westinghouse Elec. Corp. v New York City Tr. Auth., 82 NY2d 47, 54, quoting Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d at 136). In enforcing such agreements, the Court of Appeals has "recognize[d] the commercial and competing public policy realities when parties freely contract and select their own ADR process and adjudicator with some judicial review" (id.). Furthermore, in Matter of Astoria Med. Group [Health Ins. Plan of Greater New York] (11 NY2d at 135 n 1), the Court of Appeals declined to disqualify an arbitrator who was a member of one of the parties' Board of Directors, reasoning that "a member of the board of directors of a corporation is not the corporation either in law or fact."
The same reasoning would apply here, where the parties to the contract were SCO and the Trust, and the designated arbitrators were members of the Board of Trustees of the Trust. Moreover, the arbitrators' interest in the matter would not render the Members Dispute provision violative of public policy, particularly since any determination reached by that body would be subject to judicial review (see Yonkers Contr. Co., Inc. v Port Auth. Trans-Hudson Corp., 87 NY2d at 930; Westinghouse Elec. Corp. v New York City Tr. Auth., 82 NY2d at 54; Matter of Penn Cent. Corp. v Consol. Rail Corp., 56 NY2d 120, 130). Indeed, pursuant to CPLR 7601, the Supreme Court has the discretion to enforce the Members Dispute provision "as if it were an arbitration agreement." Such treatment is warranted under the particular circumstances of this case to comport with public policy, where alternative dispute resolution of the entire controversy, raising multiple, complex issues, is sought before a body with an interest in the dispute.
The parties' remaining contentions are without merit.
Accordingly, we reverse the order and judgment insofar as appealed from and remit the matter to the Supreme Court, Kings County, for further proceedings, including a hearing on SCO's affirmative defense alleging expiration of the statute of limitations, and a new determination thereafter of the petition.
IANNACCI, J.P., GENOVESI, WAN and LANDICINO, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court