## New Kensington City Municipal Authority v. Utility Workers Union of America, Local 220

*James L. Nardelli,* for plaintiff.
*Timothy A. Fedele,* for defendant.

CARUSO, *J.,* June 29, 1992—This matter is before the court as the result of a petition to vacate the arbitration award rendered by a panel convened pursuant to the procedure established under the collective bargaining agreement between the Utility Workers Union of America, Local 220 (respondent) and the Municipal Authority of the City of New Kensington (petitioner). The arbitration clause of the contract had been invoked by the parties in an effort to resolve a grievance filed by one George Anderson (the grievant), as president of the union, concerning a dispute over whether the authority was required to bid the vacant position of utility man under the contract.

A brief summary of the facts as found by this court reveals that the position of utility man had been vacant since the early 1980s, and was being filled on an as-needed basis by the authority assigning one Matthew Quatrini to temporarily perform the position's duties. During such assignments, Mr. Quatrini received the corresponding higher rate of pay. The authority refused grievant's request to open the position of utility man to the bidding procedure established under the contract. In fact, the authority had bid the position once before, in 1981, at which time no bids were submitted.

In pursuit of his contention that the position should be offered for bid under the contract, grievant filed a grievance according to the procedures established under the contract, with the decision ultimately being appealed to the final step of the grievance process: a panel of arbitrators.

Under the arbitration procedure set forth in the contract, the union and the authority would each select their own member of the panel, with the third member being selected from a list of impartial arbitrators provided by the Pennsylvania State Mediation Service. In accord with these procedures, the union selected former Union President George Anderson as its arbitrator, the authority selected attorney John Lydon, and the third and impartial arbitrator selected by both parties from the Mediation Service's list was attorney Reed Day.

At an informal arbitration hearing conducted in Pittsburgh, Pennsylvania, on June 22, 1991, both parties presented testimony and arguments, with the union and the authority each calling two witnesses, one of the witnesses for the union being the grievant and their arbitrator, George Anderson.

At the time when the union desired to call arbitrator Anderson to testify, the authority's attorney, Mr. James

L. Nardelli, objected. The basis for the objection was that in essence it would be improper for a member of the arbitration panel to testify on behalf of one of the parties. In response to this, the impartial arbitrator, Reed Day, made the observation that since each of the parties selected their own partial arbitrator, who could not be expected to vote against the party's interests, the actual decision would in fact be made by the third arbitrator. Mr. Day further observed that since the third arbitrator was, practically speaking, the only impartial party involved in the decision-making process, it would not be a conflict of interest for the union's appointed arbitrator to testify on behalf of his appointing party. The hearing continued with arbitrator Anderson being permitted to testify.

Following the conclusion of the two and one-half hour hearing, the three arbitrators met in a one-half hour executive session to discuss mixed issues of fact and law concerning the grievance. At the conclusion of the discussion, arbitrator Day requested each party to submit a list of case authorities within two weeks. Each party complied. Thereafter, by letter dated August 22, 1991, arbitrator Day sent his unsigned draft opinion, favoring the union position, to the union's arbitrator and the authority's arbitrator for their examination. In the letter Mr. Day also invited comment and criticism. Arbitrator Lydon did not sign the proposed award. Arbitrator Anderson did sign the proposed award in its existing form and sent it back to Mr. Day. Mr. Day issued the arbitration award under letter dated September 5, 1991, to counsel for the parties. It was not until several days after Mr. Lydon received a copy of the final award that he sent a dissent to Mr. Day. Immediately thereafter, the instant action was commenced by the authority.

At the heart of this matter are questions surrounding the conduct of the hearing; the necessity for and adequacy

of deliberations taking place prior to the formulation of the proposed award; and whether the award itself was proper. The court will not address these issues seriatim.

Initially, the court recognizes the need to determine the appropriate standard of review in this case. Arbitrations conducted pursuant to a written collective bargaining agreement fall within the provisions of subchapter A of the Uniform Arbitration Act, 42 Pa.C.S. §7301, et seq., provided that arbitration pursuant to the subchapter is consistent with any statute regulating labor and management relations. 42 Pa.C.S. §7302(b). As neither party has cited any statute which would make arbitration under subchapter A of the Act inapplicable, the court therefore recognizes the apparent applicability of the Uniform Arbitration Act to the instant controversy.

Under the provisions of the Act, the power to vacate an award of an arbitration panel, though broader than the power under the common law standard, is nevertheless substantially limited. As pertinent to the facts in the instant case, the grounds upon which the court may vacate an arbitration award include where fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award; where there was evident partiality by the neutral arbitrator; where corruption or misconduct in any of the arbitrators prejudicing the rights of any party occurs; or where the arbitrators exceeded their powers. 42 Pa.C.S. §7314(a)(1)(i)-(iii); 42 Pa.C.S. §7341.

In the instant case, petitioner's claim that the award should be vacated is based on three circumstances. The first is whether the neutral arbitrator erred in permitting the union's arbitrator to testify as a witness for the union, and whether the union arbitrator's act of testifying constituted an irregularity, corruption or misconduct such as

would require the award's vacation. For the following reasons, the court finds the facts insufficient to require such action.

The question of whether a particular person may testify at an arbitration hearing is one of procedure. As such, in the absence of a statement in the collective bargaining agreement to the contrary, it is within the jurisdiction of the arbitration panel to make final determinations regarding procedural issues. *Shaler Area Education Assn. v. Shaler Area School District,* 61 Pa. Commw. 211, 433 A.2d 168 (1981).[1] An examination of defendant's exhibit 2 (collective bargaining agreement), at section 1.7 (grievance procedure), reveals no provisions governing the procedure to be employed in "Step Four" arbitration, beyond specifying the constitution of the panel. Thus, the determination of whether the union arbitrator would be permitted to testify would be within the discretion of the panel. While an objection was raised at the hearing by the authority's representative, the concurrence of the neutral arbitrator with the union arbitrator in supporting his request to function as a witness rendered a simple 2-1 majority, which would be sufficient to sustain any action, including a final award. 42 Pa.C.S. §7307(5). Thus, the decision to permit the union arbitrator to testify as a witness for the union was not procedurally improper or beyond the power of the arbitrators.

---

1. This decision cites cases under the Public Employee Relations Act (43 P.S. §1101.101 et seq.), as well as those involving private labor entities, as the standard of review of an arbitration award under PERA is the same as under the Uniform Arbitration Act. *Pa. State Education Assn. with Pa. School Service Personnel v. Appalachia Intermediate Unit 08,* 505 Pa. 1, 476 A.2d 360 (1984).

The question of whether the union arbitrator's act of testifying was such an event as to constitute an irregularity or misconduct merits separate consideration. Petitioner contends that the admission of the union arbitrator's testimony at the hearing was such an irregularity as to require the subsequent award's vacation. For the following reasons, the court disagrees with this view.

Generally, an irregularity in an arbitration proceeding refers to the process employed in reaching the result, and imports bad faith, ignorance of the law, and indifference to the justice of the result. *AFSCME Local 2026, District Council 83, AFL-CIO v. Borough of State College,* 133 Pa. Commw. 521, 578 A.2d 48 (1990). Examples of circumstances which the appellate courts have found to constitute misconduct justifying vacation of an arbitration award include the ex parte reception of evidence by the panel without notice to the other party, or where a party is not permitted to examine reports to be considered by the panel or to cross-examine persons preparing such report. *Seaboard Surety Co. v. Commonwealth,* 350 Pa. 87, 38 A.2d 58 (1944). Likewise, such actions as a refusal to receive evidence, the conducting of an independent investigation by the panel, or consideration of matters not within the purview of the contract involved, have been found to require an award's vacation. *Woodland Gardens v. Murphy, Quigley & Co.,* 33 Del. Leg. J. 334 (1946).

There is a dearth of precedent on the particular question of whether testimony by a party's arbitrator in a labor dispute would constitute either misconduct or an irregularity sufficiently grave to justify an award's vacation. Petitioner cites no case, nor does this court's research reveal any reported instance of a labor arbitration award's vacation for either irregularity, misconduct or partiality

of a party's arbitrator, occasioned by the admission of testimony of a party-appointed panel member. In fact, case law from other jurisdictions notes the presumed partiality of parties' panel members in tripartite labor arbitration cases.[2]

Cases justifying vacation of an arbitration award for partiality of a panel member have dealt exclusively with arbitration in contexts other than the determination of a labor agreement. See, for example, *Pa. Liquor Control Board v. Holt Hauling & Warehousing Systems Inc.,* 64 Pa. Commw. 481, 440 A.2d 707 (1982); *Abramovich v. Pa. Liquor Control Board,* 490 Pa. 290, 416 A.2d 474 (1980). Further, decisions from other Pennsylvania judicial districts have held that where the party requesting vacation of an award on the grounds of an arbitrator's partiality either knew in advance of such partiality, or facts giving rise to an appearance of partiality, the award would not be set aside. *A. Arthur Kober Co. v. Brook Developers Inc.,* 2 D.&C.3d 371 (1976); *Martin v. School District of Red Lion Borough,* 67 York Leg. Rec. 23 (1953).

In resolving this issue of apparent first impression, the court takes note of the marked differences between compulsory judicial arbitration and contractually established tripartite labor arbitration. Judicial arbitration occurs before a panel of three impartial attorneys, none of whom are selected by the parties. Labor arbitration as provided for under the instant contract expressly re-

---

2. See, for example, *Finkelstein v. Smith,* 326 So.2d 39 (Fla. Dist. Ct. App. 1976); *Astoria Medical Group v. Health Insurance Plan of Greater N.Y.,* 11 N.Y.2d 128, 227 N.Y.S.2d 401, 182 N.E.2d 85 (1962); *Johnson v. Jahncke Service Inc.,* 147 So.2d 247 (La. Ct. App. 1962); *Stef Shipping Corp. v. Norris Grain Co.,* 209 F. Supp. 249, 253 (S.D.N.Y. 1962).

quires that each party select their own member of the panel. Thus, it would defy both logic and human nature for a party to select a person as their arbitrator who would not be expected to protect, advance and vote in accordance with the appointing party's interests.

Furthermore, the conduct of party-appointed arbitrators should be viewed in the context of their clearly partisan affiliation. What would constitute an irregularity or conflict of interest for a panel member in, for example, compulsory judicial arbitration, may not necessarily be so characterized when engaged in by an arbitrator selected by a party.

Since the instant contract was the product of negotiations between the parties, petitioner knew of the provisions therein which would result in grievances ultimately being determined by a panel consisting of one de facto partial arbitrator appointed by each party, and a third impartial member selected from the state Mediation Service's list. This would inevitably result in only one truly impartial arbitrator deciding any grievance under the contract, and petitioner's assent to this contractually established process cannot now be put aside in order that a claim of unanticipated partiality by the union's arbitrator may succeed in overturning the award. Petitioner is thus estopped from successfully asserting this ground.

It follows logically that petitioner likewise cannot successfully raise the issue of a conflict of interest resulting from the functioning of the union's arbitrator as a witness at the arbitration hearing. A conflict of interest could only arise where the party so implicated is alleged to have acted contrary to his known or apparent status. Under the constitution of the arbitration panel herein there can

be no logical inference of impartiality on the part of the union's arbitrator. Therefore, the possibility of his acting in the best interests of the union would not result in a conflict of interest which was not known or apparent to the parties.

The second issue raised by the authority's petition is the substantive question of whether the arbitration award should be overturned because it differs substantially from the relief requested in the grievance itself.

The grievance requested that the authority comply with the bidding process and bid the position of utility man, the duties of which Matthew Quatrini had been performing on a temporary basis. The final award of the arbitration panel awarded the position of utility man to Mr. Quatrini without requiring the formal bidding process to take place. Whether this award was within the power of the panel, and if so whether it takes its essence from the contract, are matters which must be considered in resolving this point.

It is a well established principle of Pennsylvania labor arbitration law that an arbitrator's decision must be upheld if it is a reasonable one, and that a reviewing court should not intrude into the arbitrator's domain because its interpretation of the agreement differs from the arbitrators. *Ridley School District v. Ridley Education Assn.,* 84 Pa. Commw. 117, 479 A.2d 641 (1984). The scope of review of an arbitrator's decision involving interpretation of a collective bargaining agreement is limited to determining whether the arbitrator's decision can, in any rational way, be derived from that agreement, viewed in light of its language, its context, and any other indications of the parties' intent. *Stein v. Philadelphia Federation of Teachers, Local 3, AFT, AFL-CIO,* 76

Pa. Commw. 381, 464 A.2d 606 (1983); *City of Scranton v. Shoemaker,* 59 Pa. Commw. 41, 428 A.2d 1048 (1981).

Viewing the instant award against this standard of review, the court's inquiry turns to whether the award grants relief of a kind requested by the grievant, and whether the award represents a result which could reasonably be achieved via the bidding process. The grievance form necessarily speaks in general terms, and states that the utility man position was within the classification of jobs which had to be bid; that the position was currently vacant; and that grievant, on behalf of the union, wishes the vacant position to be filled by the bidding process explained in the contract. As the arbitration panel found that the vacant position was within that classification of union jobs to be filled by the bidding process, the only detail they had to resolve was how the position should be filled.

In making this determination the arbitrators apparently looked to the likely result if the bidding process were invoked. Testimony revealed that the utility man position had been offered for bid once in 1981; prior to the temporary assignment of its duties to Mr. Quatrini, resulting in the receipt of no bids by the authority. Thus, it is not irrational to conclude that should the position have been offered for bids following the grievance's settlement there would have been no other bids except for that of Mr. Quatrini himself.

An examination of the bidding provisions for filling job vacancies in the contract supports the reasonableness of the award. Under section 2.7 (Job Vacancies) of the contract, there is no requirement that the bid be awarded to the most senior bidding employee, nor is there other language which would preclude the authority from awarding the position to Mr. Quatrini should the position now be offered for bid and bids be received by employees in addition to him.

Likewise, once the authority awards a bid to a particular employee the successful bidder may be returned to his former position if, in the authority's discretion, such person does not appear to be qualified. Since the authority had been assigning the utility man duties to Mr. Quatrini on a temporary basis for an extended period of time, it would be beyond the bounds of reason and fairness for the authority to say that he was not now qualified for the same duties to which they had been assigning him without objection.

As a result of these observations concerning the practical interpretation of the contract's bidding provisions, it not only appears rational that the position of utility man be awarded to Mr. Quatrini, but in fact the award appears to be the most expeditious means of achieving the same effect as would have resulted had the award only required that the position be filled by the bidding process. Further, examining these same provisions reveals that they create in neither the authority, nor any employee of the authority, any right which would be infringed by the arbitrator's award.

It is a general principle that a reviewing court may disturb an arbitration award only where there is manifest disregard of the agreement, completely unsupported by principles of contract construction. In the absence of an express contrary provision in the arbitration agreement, an arbitrator properly exercises his discretion by basing his conclusion on implications of the agreement. *Aliquippa Education Assn. v. School District of Borough of Aliquippa,* 63 Pa. Commw. 91, 437 A.2d 1039 (1981).

Since the court finds that the award of the arbitrators in the instant action merely achieves what would have been the likely, though delayed, result had the position been required to be offered for bids, and that such award does no violence to the rights of other relevant parties,

the award clearly draws its essence from the collective bargaining agreement and therefore should not be overturned on these grounds. *Central Susquehanna Intermediate Unit Education Assn. v. Central Susquehanna Intermediate Unit No. 16,* 74 Pa. Commw. 243, 459 A.2d 889 (1983).

The final issue presented in this action is whether the authority's arbitrator was impermissibly excluded from deliberations which resulted in the final award. In this regard petitioner argues specifically that there was no discussion of awarding the utility man position to Mr. Quatrini during the one-half hour executive session attended by all three arbitrators immediately following the hearing. In order to succeed on this count, there necessarily would have to exist a requirement that there be an opportunity to deliberate prior to an award, combined with a showing that the authority's arbitrator was excluded from such an opportunity to deliberate.

In support of this contention petitioner cites *Goeller v. Liberty Mutual Insurance Co.,* 523 Pa. 541, 568 A.2d 176 (1990), which he offers as requiring that the arbitrator representing the minority, or losing side of the grievance, be afforded an opportunity to convince the other arbitrators of the error of their proposed award prior to its being finalized. However, this argument fails for several reasons.

In *Goeller,* the Supreme Court of Pennsylvania held that the opportunity to deliberate is the right of the minority of which they cannot be deprived by the arbitrary will of the majority, and further held that this principle is applicable to a panel of arbitrators as a prerequisite to an award for which the parties bargained. The court went on to explain that what this principle requires is that each arbitrator must be entitled to the opportunity to persuade the others, be permitted to dissent and to

maintain his or her voice in the decision. *Goeller, supra* at 546, 568 A.2d at 178.

In the instant case, this principle was not violated. All arbitrators had the opportunity to be heard and dissent. As indicated above, the arbitrators met for 30 minutes following a two and one-half hour hearing in which all fully participated. During this half-hour meeting they discussed mixed factual and legal issues. The court finds that a fair opportunity to advance its position was extended to the authority during the executive session held immediately following the arbitration hearing. As revealed in testimony before the court, arbitrator Lydon was accorded an equal opportunity to engage in discussions and argument during this executive session. At no time did neutral arbitrator Day functioning as chairperson preclude the authority from advancing its position or participating in discussions. In fact, testimony before the court indicated that arbitrator Lydon's exchanges with arbitrator Day significantly outnumbered the statements made by union arbitrator Anderson. The neutral arbitrator requested of the others memorandums of law on certain issues he then believed to be germane. However it is important to note that he did not restrict any of the arbitrators from addressing any issues they wished in their memorandums.

Further, and most importantly, when he sent his draft opinion to the other arbitrators he invited comment and criticism to the draft opinion. In this regard it is also important to note that the neutral arbitrator had not yet signed the draft opinion when it was circulated to the other two arbitrators for their comments or criticism. Certainly this provided each arbitrator with the opportunity to attempt to persuade the neutral arbitrator to change his opinion before it became final. In addition, arbitrator

Lydon's failure to respond to the impartial arbitrator's request for comment and criticism of the draft opinion during the critical period between the circulation of the unsigned draft opinion and the final award militates against the present complaint of a failure of being given an opportunity to deliberate further.

The fact that arbitrator Lydon requested that further discussions take place immediately prior to the close of the executive session is not dispositive. Were the court to hold that a right to force further deliberations exists merely because such are requested by one party would lead to the impractical results. Were that the law, anytime a party's arbitrator sensed the opinion of the neutral arbitrator turning in favor of his opponent's position, he could then require further deliberations in an effort to convince the neutral of his position. If he were successful in doing so, however, then his opponent's arbitrator would have a corresponding right to require even further deliberations for the same purpose, resulting in an interminable cycle of deliberations whose only purpose would be the recognition of the minority's right to deliberate.

The court does not believe this is the result intended by the Supreme Court in the *Goeller* decision. Rather, the substance of the right to deliberate is the opportunity to advance one's position before the panel, without prejudicial limitation, in an effort to convince fellow panel members of the correctness of one's position. Limitations of time and procedure necessitate that deliberations be terminated when all parties have been accorded such an opportunity, and the actions of Chairperson Day were a proper exercise of the power to regulate procedure related to the hearing.

Finally, as previously mentioned, the actions of the authority's arbitrator following receipt of the proposed draft belie his claimed denial of the alleged right to a further opportunity to convince the other panel members of the correctness of his position. It is significant to

note that at the time arbitrator Lydon was furnished with the proposed draft, it did not contain the signature of any other arbitrator. The signature of arbitrator Day was absent, therefore if petitioner believed that further deliberations would be fruitful it would have been appropriate to respond to the request for comment and criticism prior to Day's signature of the proposal. After receiving the draft, petitioner neither made such a response, nor did he submit a dissent within the critical time period between circulation of the proposed draft and rendition of the final award. Instead, arbitrator Lydon remained silent, forwarding a dissent to union representative Glenn Thomas only after the issuance of the final award.[3]

It appears from an examination of the facts in the present case, viewed in light of the law outlined above, that no incident of irregularity, misconduct, or improper partiality occurred in the instant case as would be necessary to justify the vacation of the award below.

Further, the court finds that the arbitration award drew its essence from the collective bargaining agreement, as the result reached was not only rationally derived from the provisions of such contract, but appears to be merely an expedited means of effecting via the award the same

---

3. As a matter of curiosity, Justice McDermott's opinion in *Goeller*, for the unanimous court, cites two cases in support of the proposition that minority arbitrators possess the right to participate in deliberation and, if possible, convince their fellows of the correctness of their position. The cited decisions concern requiring deliberations by a court of common pleas prior to an appointment to a tax board, and requiring corporate deliberations in regard to a putative corporate act. Thus, both decisions forming the foundation for *Goeller* dealt with the right to require deliberations by presumably non-partisan boards. While *Goeller* appears to be a logical extension of such a right to situations involving a board of impartial arbitrators, it likewise appears that such right was not denied to the arbitrators in the instant case.

result which would logically and properly result in this situation from the operation of the bidding process contained in the contract.

Finally, the court finds that the principle enunciated in *Goeller* was not violated.

Therefore, the petition to vacate the arbitration award shall be denied, and the final award of the arbitration panel is hereby confirmed.[4]

### ORDER OF COURT

And now, June 29, 1992, the petition to vacate the arbitration award is denied, and the said arbitration award is hereby confirmed.

---

4. The court recognizes the obligation to confirm the award after denying the petition to vacate, based upon the holdings in *Dunlap by Hoffman v. State Farm Insurance Co.,* 377 Pa. Super. 165, 546 A.2d 1209 (1988), and *Popskyj v. Keystone Insurance Co., 388 Pa. Super. 429, 432, 565 A.2d 1184, 1186 n. 1 (1989).*