■ Jacob Rabinowitz et al., Respondents, v Yehuda Olewski et al., Appellants. — In an action, *inter alia,* to recover money owed under a partnership agreement and in a proceeding, *inter alia,* to stay arbitration, defendants Yehuda Olewski and Akiva Rabinowitz separately appeal from a judgment of the Supreme Court, Kings County (Jordan, J.), dated March 25, 1983, which directed that arbitration proceed before the Honorable Salvatore De Matteo. ¶ Judgment affirmed, with one bill of costs. ¶ The parties to this action and proceeding are all members of the Diamond Dealers Club, Inc. (hereinafter DDC). Pursuant to DDC by-laws, any claim arising between DDC members must be resolved internally within the club. The resolution process includes the use of arbitration by DDC. In April, 1978, Jacob Rabinowitz allegedly entered into an oral partnership agreement with defendant Yehuda Olewski. Jacob Rabinowitz alleges that defendant Akiva Rabinowitz acted as surety for Olewski. In October, 1981, Jacob Rabinowitz formed coplaintiff Oryl Diamond Corp., of which he is president and sole shareholder. ¶ In April, 1982, a dispute arose between the parties, when defendants allegedly refused to make good on their share of the partnership's losses. Pursuant to the DDC by-laws, Jacob Rabinowitz submitted his claim to DDC, thus initiating an arbitration proceeding against defendants. On April 20, 1982, Olewski filed a counterclaim in the arbitration proceeding before DDC. On May 3, 1982, three arbitrators and five alternates were selected by the parties from the board of arbitrators of the DDC. On or about May 7, 1982, before further proceedings could be had before the arbitrators, a disparaging letter concerning Jacob Rabinowitz surfaced in the DDC. The letter, written in Hebrew, linked him to the Palestine Liberation Organization and accused him of committing various criminal acts here and in the State of Israel. ¶ The highly inflammatory letter was circulated among the membership of the DDC, which is a predominantly Jewish organization. Among those who saw the letter were at least some of the members of the board of directors and the board of arbitrators, and Ralph Bar, vice-president of the DDC who was also chairman of the by-law revision committee and ex-officio chairman of the board of arbitrators. ¶ Thereafter, plaintiffs initiated this action to recover money owed under the partnership agreement, which was the gravamen of the pending arbitration proceeding. They also moved to stay arbitration on the ground that the DDC could not "render a fair and impartial adjudication of the merits". Arbitration was temporarily stayed pending a hearing in Special Term, Kings County (Adler, J.). Defendants in turn cross-moved to compel arbitration. On July 23, 1983, after oral argument, Special Term (Morton, J.), ordered the continuation of the stay of arbitration pending a full evidentiary hearing on the issue of bias. The court specifically ordered "that a hearing is directed for the determination of the merits of the plaintiff's [*sic*] claim that the arbitrators of the Diamond Dealers Club, Inc., cannot render a fair and impartial adjudication of the merits". ¶ After the full

evidentiary hearing Trial Term found that "the appearance of impropriety and spectre of bias among the DDC is so prevalent, that this Court cannot order the plaintiffs to proceed to the arbitration before the DDC". The court then ordered the arbitration to continue before an independent arbitrator. We affirm. ¶ The law is well settled that "in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered" (*Matter of Astoria Med. Group [Health Ins. Plan]*, 11 NY2d 128, 132; see *Matter of Belanger v State Farm Mut. Auto Ins. Co.*, 74 AD2d 938). Even in *Matter of Siegel (Lewis)* (40 NY2d 687, 691, quoting from dissenting opn at App Div 50 AD2d 858, 859 [Martuscello, J.]), relied on heavily by the defendants, the Court of Appeals acknowledged the equitable power of the courts to intervene in an arbitration proceeding before an award is rendered, when there is " 'a real possibility that injustice will result' ". The proper standard of review for the disqualification of arbitrators is whether the arbitration process is free of the appearance of bias (see *Commonwealth Corp. v Continental Co.*, 393 US 145; *Matter of Conley v Ambach*, 93 AD2d 902; *De Camp v Good Samaritan Hosp.*, 66 AD2d 766; cf. *Scott v Brooklyn Hosp.*, 93 AD2d 577). In the present case, the appearance of bias, by virtue of the circulated letter, permeates the entire DDC including the board of arbitrators from which the arbitrators for this dispute were selected. As Trial Term noted, "[t]he devastating impact of this letter to a predominantly Jewish organization cannot be overemphasized". Plaintiffs should not be required to arbitrate their claims in such a charged atmosphere. Trial Term, therefore, did not err by removing the arbitration from the DDC due to the "appearance of impropriety and spectre of bias among the DDC". We accordingly affirm. Titone, J. P., Gibbons, O'Connor and Rubin, JJ., concur.