■ In the Matter of the Arbitration between EXCELSIOR 57TH CORP., Appellant, and RALPH W. KERN et al., Respondents. [630 NYS2d 492] —Judgment, Supreme Court, New York County (Karla Moskowitz, J.), entered October 24, 1994, dismissing the petition which sought to stay the arbitration, pursuant to CPLR article 75, and disqualify the arbitrator appointed by the respondents, unanimously reversed, on the law and facts, without costs or disbursements, the petition granted and the arbitrator appointed by the respondents is disqualified and the petitioner also precluded from appointing the arbitrator in the original arbitration. The appeal from the order of the same court and Justice, entered October 18, 1994, is dismissed as academic, without costs or disbursements.

The parties entered a lease for the land owned by the landlord-respondents, dated April 19, 1965, wherein the petitioner-lessee would pay a minimum rent of $310,000 per annum for the first 25 years. The lease provided for the periodic recalculation of the rent, the first of which was set for August 15, 1990. For the period of August 1990 to August 1998 the rent was agreed to be either $310,000 or 6% of the appraised value of the land, whichever was greater. The lease also provided that if the parties were unable to agree on rent for this period, then they would resolve their dispute by arbitration as provided in article 21 of the lease.

Article 21 provides, *inter alia*, that the "Lessor and Lessee shall each appoint a fit and impartial person as arbiter" in the rent valuation arbitration. The article further provides that if the two appointed arbitrators cannot reach agreement within 30 days after the hearing they shall appoint a third arbitrator or "umpire", or that umpire will be appointed for them by the American Arbitration Association.

After petitioner Excelsior commenced the instant arbitration in July 1990 and named Jerome Block as its arbitrator, respondents brought a special proceeding seeking Block's disqualification on the grounds that he had previously worked on an unrelated matter with petitioner's counsel at that time and that Block was, therefore, not "fit and impartial." In a judgment, which was not appealed, the Supreme Court denied the respondents' motion to stay the arbitration and disqualify Mr. Block.

When Block and respondents' arbitrator Bryant were unable to reach an agreement with respect to the land appraisal, they agreed to appoint a third neutral arbitrator, Peter Korpacz, to umpire the dispute. After the hearings were held, an award was issued on June 18, 1992. The rental determination for the

eight-year period from August 1990 through August 1998 was adjudged to be $2,460,000. Bryant and Korpacz joined in that decision in which Block dissented.

After the Supreme Court confirmed the arbitration award, this Court reversed and vacated the arbitration award finding that: "It is not disputed that prior to summations in the arbitration proceeding, the 'umpire' selected by the two named arbiters, received a communication from a nonparty representing Morgan Guaranty Trust Company of New York. The extent of the communication was that the individual had obtained the arbitrator's name from the law firm representing the petitioners in the matter here in question and that Morgan Guaranty Trust Company was considering an arbitrator and appraiser for an upcoming matter. Significantly, the 'umpire' did not disclose this communication to the parties at any time prior to the issuance of the panel's determination" (*Matter of Kern [303 E. 57th St. Corp.]*, 204 AD2d 152, 153, *lv denied* 84 NY2d 810).

This Court held that because arbitration awards are subject to judicial deference, it is imperative that the arbitrator display qualities of " 'complete impartiality' " and that the "appearance of impropriety or partiality is sufficient to warrant vacatur of an award" (*supra*, at 153). We found that by not disclosing the existence and nature of the communication with Morgan Guaranty, a question of possible bias or partiality was raised and this conduct had created such an appearance of impropriety.

The respondents then resumed the arbitration by again designating Bryant as their arbitrator. Petitioner brought this article 75 petition seeking a stay and the removal of Bryant.

The IAS Court denied the application finding, *inter alia*, that the petitioner-lessee was judicially estopped from moving to disqualify Bryant as not "fit and impartial" and further, that petitioner was collaterally estopped as well.

The IAS Court erred in ruling that petitioner was judicially estopped from asserting that the respondents' appointed arbitrator is biased because of petitioner's prior argument that a party could appoint a partial arbiter who need not be completely neutral.

Petitioner's legal position previously advanced in opposition to respondents' motion to disqualify its appointed arbitrator does not preclude the petitioner from now challenging the selection of the respondents' appointed arbitrator under an entirely different set of facts. The submission of a legal argument is "of 'a different character' " (*Kimco of N.Y. v Devon*, 163 AD2d 573, 575) than an inconsistent framing of one's

factual pleadings, and therefore not a basis for judicial estoppel (*Piedra v Vanover*, 174 AD2d 191, 197, quoting *Environmental Concern v Larchwood Constr. Corp.*, 101 AD2d 591, 593 [" 'The doctrine rests upon the principle that a litigant "should not be permitted * * * to lead a court to find a fact one way and then contend in another judicial proceeding that the *same fact* should be found otherwise" ' " (emphasis added)]).

Likewise, petitioner is not collaterally estopped by the judgment of the Supreme Court which denied respondents' motion to disqualify Block. There, the IAS Court held that the lease clearly contemplates a classic tripartite arbitration in which both parties are free to appoint arbitrators who represent their position (*see, Matter of Astoria Med. Group [Health Ins. Plan]*, 11 NY2d 128). However, that holding does not affect the issue of whether Bryant should be disqualified because he has displayed extreme partisanship with respect to the issues still to be determined in this very arbitration (*see, O'Connor v G & R Packing Co.*, 53 NY2d 278).

We find that, on the facts presented, Bryant should have been disqualified because petitioner proffered evidence that showed he will be either "deaf to the testimony or blind to the evidence presented" (*Matter of Astoria Med. Group [Health Ins. Plan], supra*, at 137) in the re-arbitration. Furthermore, "in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered" (*supra*, at 132) where there is " 'a real possibility that injustice will result' " (*Matter of Siegel [Lewis]*, 40 NY2d 687, 691). The proper standard of review for the disqualification of an arbitrator "is whether the arbitration process is free of the appearance of bias" (*Rabinowitz v Olewski*, 100 AD2d 539, 540, citing *Commonwealth Corp. v Continental Co.*, 393 US 145).

In this case, the record contains three Bryant affidavits which evidence his bias and display facts which have the potential to impugn the integrity of the second arbitration. We note that his alignment with Korpacz in the previous arbitration does not automatically cast doubt on Bryant's fitness. The Bryant-Korpacz determination may indeed have been fair, but this Court was concerned with the appearance of impropriety on the part of the "umpire" and not actual prejudice.

Bryant's first affidavit states unequivocally that he does not agree with the petitioner's land residual method which "is not appropriate means to determine land value generally, and I would not have agreed to the use of any such method to value the land here". Bryant often attacks Block's partiality to petitioner and is particularly agitated that Block revealed the

offer made to Korpacz, thereby causing a vacatur of the award. Furthermore, Bryant reveals that he was also contacted by Morgan Guaranty Trust also concerning future arbitrations but states that Morgan's representative did not say that anyone at the respondents' prior law firm had recommended him.

In his second affidavit, Bryant notes that the petitioner's attack on Korpacz, sustained by this Court, "has the effect of weakening the arbitration process and if permitted will constitute an unsettling precedent to the process". Finally, in his third affidavit (submitted in opposition to the instant motion to disqualify him), Bryant avers that he made his decisions based solely on the evidence presented at the hearings and he would expect to do the same, without regard to whether it is satisfactory to respondents, upon his reappointment. Bryant says that he has an "open mind" and that he would not consider himself bound by the prior determinations, but would decide the award based on the evidence presented at the new hearing.

Even though the lease states that the parties shall appoint a "fit and impartial" arbitrator, the original IAS Court decision, denying the motion to disqualify Block, which was not appealed, is the law of this case that a classic tripartite arbitration process was intended. That being established, it is commonly accepted that "the party-designated arbitrators are not and cannot be 'neutral', at least in the sense that the third arbitrator or judge is" (*Matter of Astoria Med. Group [Health Ins. Plan], supra,* at 134). In fact, a party's ability to choose its own partial arbitrator is a valuable contractual right that courts are not likely to upset (*supra*). But simply because arbitrators can be non-neutral "does not mean that such arbitrators are excused from their ethical duties and the obligation to participate in the arbitration process in a fair, honest and good-faith manner" (*Metropolitan Prop. & Cas. Ins. Co. v J.C. Penney Cas. Ins. Co.,* 780 F Supp 885, 892).

The Court of Appeals has stated that disqualifications are usually limited to dishonesty, overt acts of misconduct, or an arbitrator's failure to " 'faithfully and fairly * * * hear and examine the matters in controversy' " by revealing " 'evident partiality or corruption' " (*Matter of Astoria Med. Group [Health Ins. Plan], supra,* at 137).

Based on Bryant's comments concerning the prior arbitration including, but not limited to, his statements about the petitioner's conduct, and his precarious position of having already heard the evidence, we find that he cannot fairly hear the evidence in this case. His actions and his contact with the party seeking his appointment demonstrate " 'evident partiality' " *(supra,* at 137).

Finally, as the IAS Court recognized in its ruling, "both sides should appoint somebody who was not involved in the prior arbitration. Because there's so much hostility in it". While we grant the petition and disqualify Bryant, we also find that petitioner's arbitrator Block should not be re-appointed for the reasons given by the IAS Court, and to maintain parity between the parties. Concur—Ellerin, J. P., Ross, Nardelli, Tom and Mazzarrelli, JJ.