[676 NYS2d 178]

In the Matter of JOHN T. MEEHAN, Appellant, v NASSAU COM-MUNITY COLLEGE, Respondent. (Proceeding No. 1.)

In the Matter of NASSAU COMMUNITY COLLEGE, Respondent, v JOHN T. MEEHAN, Appellant. (Proceeding No. 2.)

Second Department, June 8, 1998

APPEARANCES OF COUNSEL

*Pryor, Cashman, Sherman & Flynn,* New York City (*Richard M. Betheil* and *Tina C. Kremenezky* of counsel), for appellant.

*Ingerman Smith, L. L. P.,* Northport (*John H. Gross* and *Neil M. Block* of counsel), for respondent.

## OPINION OF THE COURT

BRACKEN, J. P.

These two proceedings present a common issue, to wit, whether an arbitration award issued by a tripartite board of arbitrators is subject to vacatur pursuant to CPLR 7511 (b) (1) on the ground that one of the two party-designated arbitrators had direct personal knowledge of the disputed facts and gave testimony with respect thereto. We hold that the CPLR does not authorize vacatur on this ground. We therefore reverse the judgment of the Supreme Court in Proceeding No. 2, which

vacated the award made in what the parties refer to as the "overload case". However, we affirm the judgment of the Supreme Court in Proceeding No. 1, which vacated the award in what the parties refer to as the "History Department case" on an alternative ground, i.e., public policy.

### FACTS

In each of these two proceedings, the appellant is John T. Meehan, as president of the Adjunct Faculty Association of Nassau Community College (hereinafter the union). The union is the certified bargaining representative for members of the adjunct faculty at Nassau Community College (hereinafter the college), the respondent on these two appeals.

The two disputes involved were the subjects of two arbitrations held in accordance with what is described as "Step III" in two collective bargaining agreements, one originally effective as of October 1, 1982, and one effective October 1, 1984. According to these agreements, the Step III Grievance Board is to consist of "one member selected by the College Administration, one member selected by the Adjunct Faculty Association, and a third member selected by mutual consent".

### HISTORY DEPARTMENT CASE

The arbitration proceeding referred to by the parties as "the History Department case" (Proceeding No. 1) began when the union asserted grievances based upon the college's removal of three adjunct professors from the seniority list of the History Department. The three professors in question each had a Master's degree in history, but lacked an additional 30 credits toward the attainment of a Ph D. The college removed them from the seniority list on the ground that their qualifications failed to meet minimum requirements. The union asserted that the college was applying its standards selectively, resulting in the assignment of sometimes less-qualified full-time faculty members to teach various history courses.

When the dispute arrived at Step III, the union chose Charles J. Loiacono as its designated member of the arbitration panel. Mr. Loiacono is the vice-president of the union. At the arbitration he testified to his review of the qualifications of a full-time faculty member whose Master's degree was in Near East studies, rather than in history, but who was nevertheless among the full-time faculty members assigned to teach history courses at the college, in supposed derogation of the rights of one or more of the grievants. Several other full-time faculty

members were also shown to have lacked a Master's degree in history, and to have possessed instead Master's degrees in fields such as slavic languages and education.

The arbitration award in favor of the union, dated September 1, 1995, was written in the name of Philip J. Ruffo, the "Neutral Member and Grievance Board Chairperson", with whom Mr. Loiacono, the union designee, concurred. The college's designee, Anna Maria Mascolo, who also serves as a vice-president of the college, dissented. The award was based essentially on the finding that "the stated qualifications of the History Department were selectively applied so as to discriminate against members of the adjunct faculty".

By petition dated November 22, 1995, the union sought to confirm the award. The college opposed the application, arguing, *inter alia,* that "[a]rbitrator Loiacono demonstrated partiality and engaged in misconduct by testifying under direct examination in support of the [union's] position".

The Supreme Court (Burke, J.) dismissed the petition, concluding that "[t]estimony by an arbitrator in an arbitration proceeding over which he is presiding is, at the very least, violative of the arbitrator's oath and clearly undermines the integrity of the arbitration process". In a judgment dated July 31, 1996, the court granted the parties leave to submit their dispute to a de novo arbitration. The union appeals.

OVERLOAD CASE

The arbitration proceeding referred to by the parties as "the overload case" (Proceeding No. 2) began when the union asserted grievances based on the college's assignment of certain "overload courses" to members of the full-time faculty, rather than to members of the adjunct faculty. According to the definition offered by a representative of the college, an "overload course" is one which, if assigned to be taught by a full-time faculty member, results in that faculty member's having a total caseload over the normal "base fifteen (15) hour workload per semester". In essence, the union claims that courses assigned to full-time faculty members so as to result in such an "overloading" of their normal schedules, should have been offered first to members of the adjunct faculty.

Mr. Loiacono, the union's vice-president, was again its designated member of the arbitration panel. He testified at this arbitration as well, and his testimony was to the effect that, with respect to the assignment of various overload courses, more senior adjunct instructors had been "bumped" by less senior full-time instructors.

The arbitration resulted in a finding that "the College has violated the AFA collective bargaining agreement by failing to treat overload courses as adjunct courses". Once again, Mr. Loiacono concurred with Mr. Ruffo in an award in favor of the union, and Ms. Mascolo dissented.

By petition dated November 17, 1995, the college sought to vacate the award. The college again argued that "[a]rbitrator Loiacono demonstrated partiality and engaged in misconduct by testifying under direct examination in support of the [union's] position". The union filed a cross motion for a judgment confirming the award.

The Supreme Court (Alpert, J.) granted the petition to vacate the award, concluding that "[t]he participation by a party-designated arbitrator in two different and mutually inconsistent capacities, together with the neutral arbitrator's acquiescence therein * * * undermines the integrity of the arbitral process". By a judgment entered July 3, 1996, the parties were instructed to proceed to a new arbitration. The union appeals.

## ANALYSIS

The two judgments issued by the Supreme Court in the two proceedings reflect an understandable tendency on the part of the courts, steeped as they are in notions of due process and basic fairness that have their roots in the common law, to " 'judicialize' " arbitration (*see, Matter of Astoria Med. Group [Health Ins. Plan]*, 11 NY2d 128, 136; *Madawick Contr. Co. v Travelers Ins. Co.*, 307 NY 111, 119; *Matter of Brody [Owen]*, 259 App Div 720, 721; *Fudickar v Guardian Mut. Life Ins. Co.*, 62 NY 392, 399). If an arbitrator is "a judge appointed by the parties" (*Fudickar v Guardian Mut. Life Ins. Co., supra*, at 399), the temptation might arise to apply the familiar ethical rule that "[a] judge shall disqualify himself or herself * * * [where] the judge has personal knowledge of disputed evidentiary facts" (22 NYCRR 100.3 [E] [1] [a] [ii]). The applicable statutes and the relevant case law require, however, that this temptation be resisted, because the analogy between Judge and arbitrator, and arbitration and trial, are simply " 'not very meaningful' " (*Astoria Med. Group [Health Ins. Plan], supra*, at 137, quoting Sturges, *Arbitration—What Is It?*, 35 NYU L Rev 1031, 1045-1046).

The grounds upon which a party who has either participated in an arbitration or has been served with a notice of intention to arbitrate may apply to the Supreme Court to vacate or modify the award, are set forth in CPLR 7511 (b) (1) as follows:

"The award shall be vacated on the application of a party who either participated in the arbitration or was served with a notice of intention to arbitrate if the court finds the rights of that party were prejudiced by:

"(i) corruption, fraud or misconduct in procuring the award; or

"(ii) partiality of an arbitrator appointed as a neutral; except where the award was by confession; or

"(iii) an arbitrator, or agency or person making the award exceeded his power or so imperfectly executed it that a final and definite award upon the subject matter submitted was not made; or

"(iv) failure to follow the procedure of this article, unless the party applying to vacate the award continued with the arbitration with notice of the defect and without objection".

As the Court of Appeals stated in *Matter of Granite Worsted Mills (Aaronson Cowen, Ltd.)* (25 NY2d 451, 454), "[i]t is clear that an arbitrator's award may be vacated only upon the grounds specified in the statute * * * and that, if the party moving to vacate cannot establish one of the statutory grounds, the award must be confirmed" (*Matter of City School Dist. v Tonawanda Educ. Assn.,* 63 NY2d 846; *Matter of United Liverpool Faculty Assn. v Board of Educ.,* 52 NY2d 1038; *Matter of Central Gen. Hosp. v Hanover Ins. Co.,* 49 NY2d 950). Thus, the question is whether the college's submissions demonstrate the presence of any of the grounds for vacatur specified in CPLR 7511 (b) (1).

The terms of CPLR 7511 (b) (1) (ii), which specify that the "partiality" of an arbitrator "appointed as a neutral" *may* be a basis for vacatur, imply that the "partiality" of a party-designated member of an arbitral board may *not* be the basis for vacatur. This provision conforms with the law as it evolved under the Civil Practice Act, pursuant to which an arbitrator was not subject to disqualification "solely because of a relationship to his nominator or to the subject matter of the controversy" (*Matter of Astoria Med. Group [Health Ins. Plan], supra,* at 137; *see also, Matter of Lipschutz [Gutwirth],* 304 NY 58; *Matter of American Eagle Fire Ins. Co. [New Jersey Ins. Co.],* 240 NY 398). The law recognizes the practical reality that, in a standard tripartite arbitration "each party's arbitrator 'is not individually expected to be neutral' " (*Matter of Astoria Med. Group [Health Ins. Plan], supra,* at 134; quoting 2d Preliminary Report of Advisory Comm on Practice and Procedure [1958 NY Legis Doc, No. 13], at 146; *see also, Matter of Siegel [Lew-*

is], 40 NY2d 687; *Matter of State Wide Ins. Co. v Klein,* 106 AD2d 390; *cf., Matter of Excelsior 57th Corp. [Kern],* 218 AD2d 528).

 Given that a party-designated arbitrator may in fact be "partial", Mr. Loiacono's participation in the arbitration proceedings in the dual capacity of arbitrator and witness may serve as a basis for vacatur only if his behavior in this regard can be properly characterized as constituting "corruption, fraud or misconduct" (CPLR 7511 [b] [1] [i]). We are not of the opinion that his behavior can be so characterized.

It is established that an arbitrator's having personal knowledge of the subject of controversy does not constitute misconduct in and of itself (*see, Matter of Astoria Med. Group [Health Ins. Plan], supra; see also, Matter of Siegel [Lewis],* 40 NY2d 687, *supra; Matter of State Wide Ins. Co. v Klein,* 106 AD2d 390, *supra).* Even in the judicial forum, a Judge who may be disqualified on the ground that he or she has knowledge of the facts in dispute (*see,* 22 NYCRR 100.3 [E] [1] [a] [ii]) may nevertheless participate in the proceedings upon the consent of the parties and their attorneys (*see,* 22 NYCRR 100.3 [F]). It is equally beyond dispute that, in a tripartite arbitration, during the arbitrators' deliberations, those arbitrators with personal knowledge of various facts in dispute would be free to reveal to their colleagues whatever was personally known to them. With this in mind, we would find it incongruous if an arbitrator with knowledge of disputed facts could not also express that knowledge during the arbitration hearing itself. For these reasons, we cannot conclude that the giving of testimony by an arbitrator constitutes "misconduct" within the meaning of CPLR 7511 (b) (1) (i).

 Even assuming that the arbitrator's personal knowledge of, or testimony with respect to, the facts in dispute could be considered a form of misconduct rendering the award subject to vacatur, such relief would in any event not be warranted in these cases where the college waived its right to object. In *Matter of Crystal City Police Benevolent Assn. (City of Corning)* (91 AD2d 843), the Court reviewed the award made by a tripartite panel of arbitrators, one of whose members was not only "partial" (*cf., Matter of Astoria Med. Group [Health Ins. Plan], supra; Matter of Siegel [Lewis], supra),* but "was a real party in interest as one of several claimants" (91 AD2d, at 844). Despite this irregularity, far more fundamental than any alleged in the present case, the Court held that the party aggrieved by the award had waived its objection "by participating in the arbitra-

tion with full knowledge of [the arbitrator's] interest and by failing to object until after the award" (*Matter of Crystal City Police Benevolent Assn. [City of Corning], supra,* at 844, citing *Matter of Milliken Woolens [Weber Knit Sportswear],* 11 AD2d 166, *affd* 9 NY2d 878; *Matter of Newburger [Rose],* 228 App Div 526, *affd* 254 NY 546; *Matter of Cheek v Chubb & Son,* 70 AD2d 622; *West Towns Bus Co. v Division 241 Amalgamated Assn. of St. Elec. Ry. & Motor Coach Empls.,* 26 Ill App 2d 398, 168 NE2d 473). Here, not only did the college fail to object to the testimony given by the union-designated arbitrator, there is proof that in the past arbitrators designated by the college similarly had been allowed to testify. This clearly establishes a waiver (*see, Matter of Stevens & Co. [Rytex Corp.],* 34 NY2d 123, 128-129; *Matter of Namdar [Mirzoeff],* 161 AD2d 348, *lv denied* 77 NY2d 802, *cert denied* 501 US 1251; *Matter of Lincoln Graphic Arts v Rohta / New Century Communications,* 160 AD2d 871; *Palmieri v Insurance Co.,* 67 AD2d 967; *Matter of Lebow [Bogner-Seitel Realty],* 55 AD2d 695).

For these reasons, we conclude that the judgment entered July 3, 1996, issued in connection with the "overload" case, should be reversed, the petition to vacate the award denied, and the cross petition to confirm granted. We have examined the college's alternative arguments for affirmance on this appeal, and find them to be without merit.

█ However, the judgment dated July 31, 1996, entered in connection with the "History Department case", should be affirmed, on the alternative ground of public policy. The award made in that case requires the college to reinstate the grievants, although it is undisputed that they were unqualified to teach courses in the History Department because of their lack of certain academic credentials. Such an award violates public policy (*see, Matter of Meehan v Nassau Community Coll.,* 231 AD2d 720; *Matter of Meehan v Nassau Community Coll.,* 152 AD2d 313).

PIZZUTO, FRIEDMANN and McGINITY, JJ., concur.

Ordered that the judgment entered July 31, 1996 is affirmed, without costs or disbursements; and it is further,

Ordered that the judgment entered July 3, 1996 is reversed, without costs or disbursements, the petition to vacate the arbitration award is denied, and the cross petition to confirm the award is granted.