Matter of Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v New York State Pub. Empl. Relations Bd. (2019 NY Slip Op 06676)





Matter of Patrolmen's Benevolent Assn. of the City of N.Y., Inc. v New York State Pub. Empl. Relations Bd.


2019 NY Slip Op 06676


Decided on September 19, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: September 19, 2019

528860

[*1]In the Matter of Patrolmen's Benevolent Association of the City of New York, Inc., Appellant-Respondent,
v
New York State Public Employment Relations Board, Respondent- Appellant, and City of New York, Respondent.

Calendar Date: August 21, 2019

Before: Garry, P.J., Egan Jr., Clark, Mulvey and Pritzker, JJ.


Golenbock Eiseman Assor Bell & Peskoe LLP, New York City (Jacqueline G. Veit of counsel), for appellant-respondent.
David P. Quinn, Public Employment Relations Board, Albany, for respondent-appellant.
Zachary W. Carter, Corporation Counsel, New York City (Lorenzo Di Silvio of counsel), for respondent.



Garry, P.J.
Cross appeals from an order and judgment of the Supreme Court (Weinstein, J.), entered March 19, 2019 in Albany County, which, in a combined proceeding pursuant to CPLR articles 75 and 78 and action for declaratory judgment, granted a cross motion by respondent City of New York to dismiss the petition/complaint.
In July 2017, the most recent collective bargaining agreement between petitioner and respondent City of New York expired. Petitioner and the City were unable to negotiate a successor agreement thereafter, and petitioner filed an application for public interest arbitration with respondent Public Employment Relations Board (hereinafter PERB). Pursuant to the Public Employees' Fair Employment Act of 1967 (see Civil Service Law art 14), commonly known as the Taylor Law, PERB referred the matter to a tripartite public arbitration panel, consisting of one member appointed by the City, one member appointed by petitioner, and one member appointed jointly by the City and petitioner (see Civil Service Law § 209 [1], [4] [c] [ii]). The City selected Robert Linn — who was then the Commissioner of the City's Office of Labor Relations — as its party-arbitrator. Petitioner sent three letters to PERB's Director of Conciliation objecting to Linn's appointment on the grounds of his alleged partiality and his prior representation of petitioner. The Director did not respond. Following petitioner's selection of its party-arbitrator and the parties' joint selection of the third panel member, the Director convened the panel and designated Linn as the City's party-arbitrator.
Petitioner commenced this combined proceeding pursuant to CPLR articles 75 and 78 and action for declaratory judgment seeking to disqualify Linn from service. Respondents each filed pre-answer cross motions to dismiss. Following oral argument and additional submissions, Supreme Court granted the City's cross motion and dismissed the petition/complaint. Petitioner appeals, and PERB cross-appeals.
Preliminarily, PERB asserts in its notice of cross appeal that Supreme Court denied its cross motion to dismiss the petition/complaint. However, the petition/complaint was dismissed in its entirety, and we find nothing in the order and judgment indicating that PERB's cross motion was denied or that any cause of action remains against it. As such, PERB is not an aggrieved party, and its cross appeal must be dismissed (see CPLR 5511; Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539, 544-545 [1983]). Nevertheless, we may consider PERB's arguments as alternate grounds for affirmance of the dismissal of the petition/complaint (see Matter of Seney v Board of Educ. of the E. Greenbush Cent. Sch. Dist., 103 AD3d 1022, 1022 n 1 [2013]).
The Taylor Law was amended in 1998 to permit police and fire unions in the City and certain other municipalities to have their collective bargaining disputes resolved by PERB (see L 1998, ch 641). Since then, four completed public interest arbitrations have taken place between petitioner and the City — one in 2001 and 2002 (hereinafter the first arbitration), the next in 2004 and 2005 (hereinafter the second arbitration), the third in 2007 and 2008 (hereinafter the third arbitration) and the fourth in 2014 and 2015 (hereinafter the fourth arbitration). In 1999, Linn, an attorney who had previously worked for the City as, among other positions, its Director of Municipal Relations [FN1] and had then founded his own consulting firm, was retained by petitioner to provide labor relations consulting services. Linn initially provided services to petitioner in connection with litigation (hereinafter the Taylor Law litigation) in which the City and PERB disputed PERB's jurisdiction over collective bargaining disputes between the City and petitioner and the constitutionality of the amended Taylor Law. Petitioner was separately represented by counsel, but asserts that Linn also provided representation by such means as participating in discussions of petitioner's legal strategy, interacting with petitioner's general counsel, providing analyses of the parties' legal pleadings, and participating in moot courts to prepare for oral argument. Petitioner ultimately prevailed in the Taylor Law litigation (see generally Patrolmen's Benevolent Assn. of City of N.Y. v City of New York, 97 NY2d 378 [2001]).
Thereafter, Linn continued to provide consulting services to petitioner during the first arbitration and in negotiations leading up to the second arbitration. Petitioner asserts that, during this period, Linn was instrumental in developing its strategic position as to whether the Taylor Law's comparable wages provision (see Civil Service Law § 209 [4] [c] [v] [a]) requires comparison with the wages, hours and conditions of employment of other local police employees to the exclusion of those of other nonpolice employees. According to petitioner, this issue has continued to be significant in subsequent arbitrations after Linn completed his representation of petitioner in 2003, and will likewise be significant in the current arbitration. Petitioner further asserts that, until his consulting role terminated in 2003, Linn participated in confidential, privileged discussions on the comparable wages issue and was privy to confidential information about the strengths and weaknesses of petitioner's legal positions.
At the commencement of the fourth arbitration in September 2014, the City chose Linn as its party-arbitrator. Petitioner sent a written objection to PERB challenging Linn's appointment on the ground of his prior "attorney relationship" with petitioner. PERB's Director of Conciliation informally advised the parties that he had been advised by PERB's general counsel that PERB did not have jurisdiction to disqualify Linn. PERB then convened the panel with Linn as the City's party-arbitrator. Petitioner asked the panel to disqualify Linn, and the City opposed the request, asserting that petitioner's remedy was a proceeding pursuant to CPLR article 78. Following briefing and a hearing, a majority of the panel — made up of Linn and the jointly-appointed third member — concluded, over the dissent of petitioner's appointed party-arbitrator, that the panel had no jurisdiction to consider petitioner's disqualification request. Petitioner sought no further administrative or judicial review of this determination, participated in the fourth arbitration without renewing its objections, and did not challenge the panel's ultimate arbitration award (see generally CPLR 7511 [b] [1]).
Initially, we reject PERB's contention that petitioner was required to exhaust administrative remedies before commencing this combined proceeding/action. Although exhaustion is generally required before a party may seek judicial review of an agency's action, the rule does not apply when "resort to an administrative remedy would be futile" (Watergate II Apts. v Buffalo Sewer Auth., 46 NY2d 52, 57 [1978]). Here, as previously noted, PERB's Director of Conciliation had advised petitioner during the fourth arbitration that it was PERB's position that it did not have jurisdiction to disqualify Linn as the City's party-arbitrator. PERB then implicitly reiterated that position by designating Linn as the party-arbitrator in the fourth arbitration over petitioner's objections, by failing to respond to petitioner's objections to Linn's reappointment at the outset of the current arbitration, and by again designating Linn as the City's party-arbitrator. Indeed, in its cross motion to dismiss the petition/complaint in Supreme Court, PERB repeated its position that it has no authority to disqualify the City's selected party-arbitrator and stated that this position was the reason for PERB's failure to respond to petitioner's objections to Linn's selection. Given these consistent expressions of PERB's position, Supreme Court did not err in concluding that it would have been futile to require petitioner to seek further administrative review (see Matter of Friedman v Rice, 30 NY3d 461, 473-474 [2017]; Lehigh Portland Cement Co. v New York State Dept. of Envtl. Conservation, 87 NY2d 136, 141-142 [1995]; Matter of Stewart v Roberts, 163 AD3d 89, 95 [2018]; New York State Assn. of Counties v Axelrod, 150 AD2d 845, 848 [1989, Mikoll, J., dissenting], lv dismissed 75 NY2d 765 [1989]).[FN2]
Petitioner contends that Supreme Court erred in dismissing the petition/complaint, asserting that Linn's disqualification is required pursuant to Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.9 (a) because there is a substantial relationship between his role as the City's party-arbitrator in the current arbitration and his prior representation of petitioner as a consultant during the first arbitration and the second arbitration, and because Linn obtained confidential information during his prior representation of petitioner.[FN3] [FN4] Petitioner further asserts that there is an appearance of impropriety warranting Linn's disqualification because of his prior representation of petitioner and, finally, that Linn has demonstrated extreme partiality and hostility toward petitioner that warrants his disqualification.
We turn first to the City's contention that petitioner waived its claims arising from Linn's prior representation by failing to seek judicial review of Linn's appointment as the City's party-arbitrator during the fourth arbitration after its objections on the same grounds to PERB and the panel were denied.[FN5] Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.9 (a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Petitioner asserts that no waiver could have occurred here, as no written consent was provided. However, even when no such written waiver has been procured, "many courts have nevertheless denied [requests for] disqualification [of counsel] upon finding that a party has waived any objection to the purported conflict of interest" (Matter of Peters, 124 AD3d 1266, 1268 [2015]; see e.g. Hele Asset, LLC v S.E.E. Realty Assoc., 106 AD3d 692, 693-694 [2013]; Gustafson v Dippert, 68 AD3d 1678, 1679 [2009]; Lake v Kaleida Health, 60 AD3d 1469, 1470 [2009]). A party who "was aware or should have been aware of the facts underlying an alleged conflict of interest for an extended period of time before [requesting disqualification] . . . may be found to have waived any objection to the other party's representation" (Matter of Peters, 124 AD3d at 1268 [internal quotation marks and citation omitted]).
Here, petitioner was aware during the fourth arbitration of the same facts that it now relies upon as the basis for Linn's disqualification, but nevertheless acquiesced to Linn's role during that arbitration as the City's party-arbitrator following the denial of its disqualification requests, and petitioner neither commenced a special proceeding seeking Linn's disqualification, as it did here, nor sought review of the ultimate award. As petitioner notes, its current request for Linn's disqualification was not made "in the midst of litigation" (Hele Asset, LLC v S.E.E. Realty Assoc., 106 AD3d at 694), as the fourth arbitration had concluded before petitioner raised its current objection to Linn's reappointment. Nevertheless, petitioner itself argues that all of the parties' arbitrations are closely related, as they involve the same parties, the same statute, similar issues of wages, hours and working conditions and, specifically, the same issue of the interpretation of the Taylor Law's comparable wages provision. Under these circumstances, the same policy considerations apply to petitioner's disqualification request as would be taken into account in the context of a request made during ongoing litigation, including the possibility that disqualification of the City's selected party-arbitrator — after petitioner had acquiesced in the same selection in the immediately preceding arbitration — would "redound[] to the strategic advantage of one party over another" (S & S Hotel Ventures Ltd. Partnership v 777 S. H. Corp., 69 NY2d 437, 443 [1987]). Notably, petitioner has not alleged that any facts supporting its disqualification request on the ground of prior representation have changed since the fourth arbitration, nor has it claimed that any of the dangers that it now suggests could result from Linn's renewed role as party-arbitrator — such as the use of confidential information or an appearance of impropriety — actually occurred during the fourth arbitration. Accordingly, we find that, by participating in the fourth arbitration without pursuing its request for Linn's disqualification based upon his prior representation of petitioner, petitioner has "intentional[ly] relinquish[ed]" its "known right" to bring such a challenge (Gilbert Frank Corp. v Federal Ins. Co., 70 NY2d 966, 968 [1988]; see Matter of Piller v Schwimmer, 135 AD3d 766, 768-769 [2016]; Matter of Glatzer v Glatzer, 73 AD3d 1173, 1175 [2010], lv dismissed 15 NY3d 948 [2010]; Matter of Arner v Liberty Mut. Ins. Co., 233 AD2d 321, 321 [1996]; see also Matter of J.P. Stevens & Co. [Rytex Corp.], 34 NY2d 123, 128-129 [1974]; Matter of Reilly v Progressive Ins. Co., 5 AD3d 776, 777 [2004]; Matter of Crystal City Police Benevolent Assn. [City of Corning], 91 AD2d 843, 844 [1982]).
We turn next to petitioner's claim that Linn should be disqualified based upon improper partiality and hostility toward petitioner.[FN6] "[S]trange as it may seem to those steeped in the proscriptions of legal and judicial ethics," New York has no requirement that a party-appointed arbitrator must be impartial (Matter of Siegel [Lewis], 40 NY2d 687, 690 [1976]). It is well recognized that tripartite arbitration has a "partisan character" (Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y., 11 NY2d 128, 135 [1962]). "The right to appoint one's own arbitrator, which is of the essence of tripartite arbitration . . ., would be of little moment were it to comprehend solely the choice of a 'neutral.' It becomes a valued right, which parties will bargain for and litigate over, only if it involves a choice of one believed to be sympathetic to [the selecting party's] position or favorably disposed to him [or her]" (id.; see 13 Weinstein-Korn-Miller, NY Civ Prac CPLR ¶ 7511.16). Notably, in tripartite arbitration, both parties are equally free to select the arbitrators they prefer. Further, party-appointed arbitrators typically have a depth of knowledge on the subject in question that "can be of assistance to the neutral member, who is not in a position to appreciate the problem and the fine points of its setting. . . . [T]o disqualify an arbitrator because of [partiality] . . . would be to withhold from the [panel] a source of the specialized knowledge which contributes to the unique value of the arbitration process" (Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d at 138 [internal quotation marks and citations omitted]). Consistent with these principles, CPLR article 75 provides for the vacatur of an arbitration award based upon the partiality of an arbitrator only when the challenged arbitrator was "appointed as a neutral" (CPLR 7511 [b] [1] [ii]; see Matter of Meehan v Nassau Community Coll., 243 AD2d 12, 17-18 [1998], lv denied 92 NY2d 814 [1998]).
Nevertheless, "simply because arbitrators can be non-neutral does not mean that such arbitrators are excused from their ethical duties and the obligation to participate in the arbitration process in a fair, honest and good-faith manner" (Matter of Excelsior 57th Corp. [Kern], 218 AD2d 528, 531 [1995] [internal quotation marks and citation omitted]). Moreover, "in an appropriate case, the courts have inherent power to disqualify an arbitrator before an award has been rendered" (Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d at 132; accord Matter of Excelsior 57th Corp. [Kern], 218 AD2d at 530).[FN7] Here, petitioner argues that Linn made several public statements during negotiations and nonbinding mediation leading up to the current arbitration that reveal that he is so extremely partial that he will not comply with that obligation. As examples, petitioner asserts that Linn called petitioner's application for the declaration of an impasse "ridiculously premature," stated on at least two occasions that petitioner had failed to negotiate in good faith, and predicted that the panel in the current arbitration would uphold the City's "pattern bargaining" interpretation of the Taylor Law's comparable wages provision and would ultimately rule in the City's favor. We reject petitioner's assertion that these statements require Linn's disqualification based on "evident partiality" (Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d at 137 [internal quotation marks and citation omitted]). Notably, the quoted language in Matter of Astoria came from former Civil Practice Act § 1462 (2), which then permitted a challenge to any arbitrator on the ground of partiality.[FN8] When CPLR 7511 (b) (1) (ii) was subsequently enacted, the phrase "evident partiality" was removed and partiality was made a ground for vacatur only as to neutral arbitrators. It is well established that these alterations were intentional and were based upon the increasing prevalence of tripartite arbitration using party-appointed arbitrators. "[T]he Advisory Committee on Practice and Procedure took 'cognizance of the common practice of each party appointing his [or her] own arbitrator who is not individually expected to be neutral' and declared that 'partiality of such arbitrators should not be a ground for vacating the award'" (id. at 137 n 2, quoting Second Preliminary Report of the Advisory Committee on Practice and Procedure [1958 NY Legis Doc No. 13]). Accordingly, the "evident partiality" of a party-appointed arbitrator, without more, is not a ground for vacatur or disqualification.
Further, even pursuant to the former Civil Practice Act, a partiality challenge was required to "be based on something overt, some misconduct on the part of an arbitrator, and not simply on his [or her] interest in the subject matter of the controversy or [the arbitrator's] relationship to the party who selected him [or her]" (Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d at 137). If a party-arbitrator's statements of support for a party's position were sufficient, without more, as a ground for his or her disqualification, the principle that party-arbitrators need not be neutral would have no meaning. Linn's statements, although strongly voiced, do not reveal misconduct of any kind or indicate that he will disregard the evidence or has prejudged the issues (compare Matter of Excelsior 57th Corp. [Kern], 218 AD2d at 530-532 [party-arbitrator was disqualified from serving in that role in renewed arbitration following the vacatur of a previous arbitration award, as he had heard the same evidence in the vacated arbitration and his statements and actions showed that he had prejudged the issues]). Thus, Supreme Court did not err in declining to disqualify Linn from serving as the City's party-arbitrator (compare Matter of Astoria Med. Group [Health Ins. Plan of Greater N.Y.], 11 NY2d at 138; Matter of Reddy v Schaffer, 123 AD3d 935, 936 [2014]; Matter of Montague Pipeline Tech. Corp. v Grace-Lansing & Grace Indus., 238 AD2d 510, 510 [1997]).
The parties' remaining arguments are rendered academic by our determination.
Egan Jr., Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the cross appeal is dismissed, without costs.
ORDERED that the order and judgment is affirmed, without costs.



Footnotes

Footnote 1: The former position of Director of Municipal Relations is equivalent to the current title of Commissioner of the City's Office of Labor Relations — that is, the position that Linn held when this dispute arose.

Footnote 2: We find no support in Civil Service Law § 213 (a) for petitioner's assertion that, by identifying in that statute certain orders that may be deemed final for purposes of judicial review, the Legislature intended to foreclose all other exceptions to the administrative finality rule, including the futility doctrine. "[I]n the absence of express language indicating its intention, it is presumed that the Legislature did not intend to overturn long established rules of law" (McKinney's Cons Laws of NY, Book 1, Statutes § 74, Comment at 158 [1971 ed]; see Crump v Unigard Ins. Co., 291 AD2d 692, 693 [2002], affd 100 NY2d 12 [2003]).

Footnote 3: For the purpose of this analysis, we will assume without deciding that, as petitioner contends, Linn's roles as petitioner's labor relations consultant in the first arbitration and the second arbitration and thereafter as the City's party-arbitrator are equivalent to representation by counsel within the meaning of Rules of Professional Conduct (22 NYCRR 1200.0) rule 1.9 (a).

Footnote 4: In Supreme Court, petitioner also asserted that a substantial relationship exists between Linn's status as the City's party-appointed arbitrator and his representation of petitioner during the Taylor Law litigation. Supreme Court rejected that argument, and petitioner does not challenge that aspect of the court's order and judgment.

Footnote 5: Contrary to petitioner's claims, Supreme Court did not conclude that such a waiver had occurred, finding only that petitioner's failure to seek judicial review in the fourth arbitration was, "at the very least[,] an appropriate consideration in determining whether disqualification [was] warranted."

Footnote 6: This claim was not waived, as it is based on events that occurred following the conclusion of the fourth arbitration.

Footnote 7: We decline to rule, as the City requests, that the remedy of judicial disqualification of a party-appointed arbitrator in a public interest arbitration is unavailable as a matter of law before an award has been rendered. This argument appears to be unpreserved; nevertheless, it "presents a question of law that appears on the face of the record that could not have been avoided had it been properly raised" (Salamon v Alpine Acres Condominium, 172 AD3d 1668, 1669 n 2 [2019]; see Rew v County of Niagara, 115 AD3d 1316, 1317 [2014]). 

Footnote 8: The Federal Arbitration Act (see 9 USC § 1 et seq.) — which is not controlling here — currently provides that an arbitrator's "[e]vident partiality or corruption" is a ground for vacatur of an arbitration award (9 USC § 10 [a] [2]).